(No. 62107.—

EUGENE HUFFORD, Appellee, v. HARLAN G. BALK, Appellant.

*Opinion filed June 6, 1986.—Rehearing denied September 26, 1986.*

MILLER, J., took no part.

Pollock, Ennis & Heck, of Quincy, for appellant.

Costello, Long, Young & Dvorak. Ltd., of Springfield, (Verne H. Evans, of counsel), for appellee.

JUSTICE GOLDENHERSH delivered the opinion of the court:

Defendant, Harlan G. Balk, appealed from the judgment of the circuit court of Adams County entered, following a bench trial, in favor of plaintiff, Eugene Hufford. In a Rule 23 order (87 Ill. 2d R. 23; 131 Ill. App. 3d 1172), a divided appellate court affirmed in part, reversed in part, and modified the judgment, resulting in a substantial reduction in the amount awarded. We allowed plaintiff's petition for leave to appeal (103 Ill. 2d R. 315).

Plaintiff, a real estate broker, entered into a contract with defendant for the listing and sale of two nursing homes. The agreement, in pertinent part, provided:

"I hereby appoint Hufford Real Estate as my exclusive agent, granting permission for 90 days ***.

Selling Price 3,000,000.00 or any lesser price I agree to accept.

If Hufford Real Estate is successful in obtaining a ready, willing and able Buyer, or if said property is sold, contracted, leased, or rented, or traded by me or any other person during the listing period, I will pay Hufford Real Estate a 6% commission on the total selling or exchange price. This commission shall be lien on the property and on earnest money until paid. Minimum commission $1000.00."

The expiration date was extended, and during the extended period the nursing homes were leased by defendant to David Van Dyke for terms of five years with gross rentals of $745,000 for one nursing home, and $900,000

for the other.

The circuit court made specific findings of fact that the parties entered into the agreement, that while it was in force the nursing homes were leased, that the agreement "creates in plaintiff an exclusive right to sell the real estate and creates a right to a commission 'if said property is sold, contracted, leased, or rented or traded' during the listing period." The court further found that plaintiff was entitled to a commission of 6% of the total rents provided in the two leases and entered judgment for plaintiff in the sum of $98,733.60, 6% of the total rentals for the full terms of the leases.

In reviewing the evidence the appellate court said:

"Plaintiff testified that he made over 100 contacts with prospective buyers in attempting to sell the properties; one of these was David Van Dyke. Nothing immediate came of the contact, but plaintiff further testified that defendant told him that he would like to get Van Dyke into a permanent lease agreement. Plaintiff stated that he recommended against leasing, but in the event leases were obtained, he would want a 10% commission. On December 7 or 12, 1980, plaintiff learned that the properties had been leased when he saw an advertisement in a local newspaper. Van Dyke testified by deposition that he signed leases on the properties on December 15, 1980. He further testified that he never discussed sale or lease of the properties with plaintiff; that he knew plaintiff was acting as broker for defendant when he first viewed the properties, but was not aware of any broker being involved when he signed the leases.

Defendant's testimony was quite contrary. He claimed that the leases were executed on December 30, 1980, some nine days after the expiration of the listing agreement. He conceded, however, that he began receiving rent from Van Dyke on December 15. He acknowledged that he had recently been convicted of income tax evasion."

The appellate court held that the language of the

agreement did not provide for a commission in the event that the property was rented and, therefore, plaintiff was entitled to receive only the minimum commission of $1,000.

Plaintiff contends that the appellate court should have restricted its review to the sole question whether the findings of the circuit court were against the manifest weight of the evidence and that it applied "the wrong criteria in reviewing the trial court's judgment." Defendant argues that a reviewing court may make its own independent construction of a contract and that in the interpretation of its terms it is not limited by the trial court's judgment.

The parties do not question that a contract was entered into; the controversy concerns its proper interpretation. "The meaning of a written contract is ordinarily a question of law and not one of fact." (*Chicago Daily News, Inc. v. Kohler* (1935), 360 Ill. 351, 363.) In construing the contract, effect must be given to each clause and word used, without rejecting any words as meaningless or surplusage. (*Thomas Hoist Co. v. William J. Newman Co.* (1936), 365 Ill. 160.) If the language of a contract is sufficiently ambiguous so that the intentions of the parties cannot be determined from the language itself, extrinsic evidence may be considered.

We do not agree with the appellate court that the agreement contained no provision for the payment of a commission in the event that the property was leased. It is true that the agreement is inartfully drawn and must be construed against plaintiff, who prepared it. If "rental" were substituted for "exchange" in the provision that "if said property is sold, contracted, leased, or rented, or traded by me or any other person during the listing period, I will pay Hufford Real Estate a 6% commission on the total selling or exchange [rental] price," there would be no dispute that the commission was pay-

able. We hold that the use of the word exchange did not create an ambiguity and that the appellate court erred in its construction of the contract.

Assuming, *arguendo*, that the quoted provision created an ambiguity, the rule applicable is that the findings of the circuit court will not be disturbed unless they are against the manifest weight of the evidence. From our examination of the record, we conclude that the findings were not against the manifest weight of the evidence.

For the reasons stated, the judgment of the appellate court is reversed, and the judgment of the circuit court is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*

JUSTICE MILLER took no part in the consideration or decision of this case.