# Illinois Official Reports

## Appellate Court

***In re Marriage of Wojcik*, 2018 IL App (1st) 170625**

| | |
|---|---|
| Appellate Court Caption | *In re* MARRIAGE OF WOJCIK (Sandra Wojcik, Petitioner-Appellee, and Michael Wojcik, Respondent-Appellant). |
| District & No. | First District, First Division<br>Docket No. 1-17-0625 |
| Filed | December 17, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 05-D-12990; the Hon. Mark Lopez, Judge, presiding. |
| Judgment | Affirmed in part and reversed in part. |
| Counsel on Appeal | Benton H. Page, Errol Zavett, and James Rubens, of David Friedman, LLP, of Chicago, for appellant.<br><br>Kathy Svanascini, of Law Offices of Kathy Svanascini, PC, of Palos Heights, for appellee. |
| Panel | JUSTICE GRIFFIN delivered the judgment of the court, with opinion.<br>Presiding Justice Mikva and Justice Walker concurred in the judgment and opinion. |

¶ 1        Petitioner Sandra Wojcik and respondent Michael Wojcik agreed to dissolve their marriage in a marital settlement agreement. The settlement agreement provided that respondent pay financial support to petitioner for 60 months to support both the petitioner and the parties' then-minor child. After respondent made the payments for 60 months, petitioner requested that the court extend respondent's maintenance obligation.

¶ 2        Respondent argued that he had satisfied his support obligations under the marital settlement agreement and, thus, that the petition for maintenance should be dismissed. The trial court disagreed. A trial was held and respondent was ordered to pay permanent maintenance to petitioner. The trial court also ordered respondent to pay retroactive maintenance, dating back to when the petition was filed, and ordered respondent pay prejudgment interest on the retroactive maintenance award. We affirm the trial court's judgment on the issue of maintenance, but we reverse that part of the trial court's judgment that pertains to prejudgment interest.

¶ 3                                              BACKGROUND

¶ 4        Petitioner Sandra Wojcik and respondent Michael Wojcik married in 1978. They had three children during the course of the marriage. In 2005, petitioner filed a petition to dissolve the marriage. The parties entered into a marital settlement agreement, and the trial court entered a judgment dissolving the marriage that incorporated the parties' agreement.

¶ 5        During the marriage, petitioner was a stay-at-home mom for the most part. When respondent opened his insurance business, petitioner worked there for a few years. Around the time she filed for dissolution of the marriage, petitioner began studies to earn her master's degree. She received her master's degree right around the time the dissolution proceedings were wrapping up.

¶ 6        Under the dissolution judgment, petitioner received all of the parties' retirement and investment accounts, valued at $644,289. Petitioner also received the parties' marital residence, in which they had substantial equity, and a vehicle. Respondent received the parties' condominium in Chicago and a townhouse they owned, both of which were subject to substantial mortgage obligations. Respondent retained his 25% interest in his parents' home. Respondent also received approximately 7122 shares of stock in the Horton Group[1] that had substantial value[2] and two vehicles. Respondent continued to be employed during the course of the dissolution proceedings. He was making approximately $386,000 in income at the beginning of the proceedings and that amount steadily increased in the ensuing years.

---

[1]During the marriage, the Horton Group purchased the insurance company that respondent started and owned. Respondent was employed by the Horton Group from that point forward.

[2]At the time of dissolution, neither the parties nor the trial court assigned a specific value to the Horton Group stock that respondent was awarded. At the time of the trial in these post-dissolution proceedings, there was evidence that respondent had acquired even more shares and that his interest in the company was worth approximately $1.5 million. For argument's sake, respondent estimates that the shares respondent was awarded might have been worth around $760,000 at the time the marriage was dissolved.

¶ 7       Among other obligations, respondent agreed to pay petitioner $13,500 per month in unallocated family support for a period of 60 months. The parties agree in their briefs on appeal that "unallocated family support" was intended to be a combination of child support for the parties' one minor child and maintenance or alimony for petitioner. The precise language in the settlement agreement, Paragraph 2.0, is that "Michael shall pay to Sandra, as and for Unallocated Family Support, the periodic sum of thirteen thousand five hundred dollars ($13,500) per month, for a period of sixty (60) months, reviewable." Respondent expressly waived any claim to maintenance from petitioner. Petitioner did not expressly waive maintenance from respondent.

¶ 8       Paragraph 2.1 of the settlement agreement sets forth certain events that might occur that would serve to terminate respondent's obligation to pay unallocated family support. Those termination events are: the death of either petitioner or respondent, petitioner getting remarried, or petitioner cohabitating with another person on a resident, continuing, conjugal basis.

¶ 9       Paragraph 2.3 of the settlement agreement provides that

> "[t]he Unallocated Family Support provided for in Paragraph 2.0 hereof may be modifiable by the Court, provided that an appropriate Notice and Petition seeking modification are filed with the Court in the case between the parties prior to the happening of any of the termination events set forth in Paragraph 2.1 hereof."

The settlement agreement contains broad waivers and states that each party waives all claims against the other, except for claims based on rights and obligations contained in the agreement.

¶ 10       There is no present dispute that respondent made the required family support payments for the 60-month period set forth in the parties' agreement. The parties' minor child reached the age of maturity right near the end of that period. A month or so after the unallocated family support payment period ended, petitioner filed a petition to set maintenance. Respondent filed a motion to dismiss that petition, arguing that he had completed the support obligation he undertook by agreement. Respondent's position was that, to the extent the support obligation was modifiable, it could only be modified or extended during the period that the obligation was ongoing, not after he had fulfilled it. The trial court denied the motion to dismiss, and the case proceeded for trial on the issue of maintenance.

¶ 11       At trial, both petitioner and respondent testified. A month after the judgment for dissolution of the marriage was entered, petitioner was hired as a teacher. However, she resigned her position as a teacher in 2015, before the trial these post-dissolution proceedings, because of threats she received from students. Petitioner applied for other teaching jobs, but did not secure employment as a teacher. About three months after resigning her teaching position, petitioner was hired in a sales associate position earning $9 per hour plus commissions. She received health benefits. She also worked a few hours a month as a tutor for $13 per hour.

¶ 12       Petitioner testified that she could find a suitable job based on her education and experience, but that she could not earn enough income to support herself. Exhibits introduced at trial and admitted into evidence show that petitioner's monthly expenses were approximately $6191 and her monthly income was $1418. The trial court found petitioner to be credible and found her efforts to secure employment to be reasonable.

¶ 13       The court imputed the income petitioner was earning as a teacher, finding that such an amount was a reasonable baseline for what she could earn from full-time employment. The trial court found that "even with Sandra's imputed income she can never achieve the level of

income that would allow her to maintain the lifestyle the parties enjoyed during the marriage on her income alone." The court gave "great weight to the 30 year duration of the marriage" and observed that petitioner's "ability to earn income was impaired by her domestic duties having foregone or delayed her education and employment," while respondent's career was able to thrive. Accordingly, the trial court found that petitioner was entitled to permanent maintenance in an amount ultimately determined to be $5700 per month. The court also ordered respondent to pay $239,400 in retroactive maintenance plus prejudgment interest on that amount. Respondent appeals.

¶ 14                                    ANALYSIS
¶ 15                               I. Motion to Dismiss
¶ 16    Respondent argues that the trial court erred when it denied his motion to dismiss the petition to set maintenance. Respondent maintains that he fulfilled his maintenance obligation under the dissolution judgment and, therefore, that the trial court lacked the authority to set a new support obligation. Respondent's motion to dismiss was brought under section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2016)).

¶ 17    A section 2-619 motion to dismiss admits the legal sufficiency of the complaint. *Id.* The purpose of a section 2-619 motion to dismiss is to dispose of issues of law and easily proved issues of fact at the outset of the litigation. *In re Estate of Gallagher*, 383 Ill. App. 3d 901, 903 (2008). Although a section 2-619 motion to dismiss admits the legal sufficiency of a complaint, it raises defects, defenses, or some other affirmative matter appearing on the face of the complaint or established by external submissions that defeat the plaintiff's claim. *Ball v. County of Cook*, 385 Ill. App. 3d 103, 107 (2008). We review the trial court's decision on a motion to dismiss *de novo*. *American Family Mutual Insurance Co. v. Tyler*, 2016 IL App (1st) 153502, ¶ 9.

¶ 18    The marital settlement agreement provides that "Michael shall pay to Sandra, as and for Unallocated Family Support, the periodic sum of thirteen thousand five hundred dollars ($13,500) per month, for a period of sixty (60) months, reviewable." The parties both acknowledge that unallocated family support is comprised of child support and support for petitioner. The parties' minor child reached the age of maturity during the set payment period, so child support is not an issue. So we must address respondent's contention that the trial court did not have authority to order maintenance to continue after the 60-month period set forth in the marital settlement agreement had already elapsed.

¶ 19    Respondent maintains that "[a] review or extension of maintenance may only occur where a judgment awards or reserves maintenance in the first place" (citing *In re Marriage of Heasley*, 2014 IL App (2d) 130937, ¶ 25). But the marital settlement agreement in this case expressly states that respondent's support obligation is "reviewable." The parties did agree that the support obligation was reserved and could be reviewed. The parties also agreed that the court could modify the support obligation provided that a petition was filed and no termination event had occurred. "[T]he intent of the parties to preclude or limit modification or termination of maintenance must be *clearly manifested* in their agreement." (Emphasis in original.) *In re Marriage of Brent*, 263 Ill. App. 3d 916, 923 (1994). There is no such manifestation of intent to limit the modification of maintenance in the marital settlement agreement in this case. Instead, it was expressly made reviewable.

¶ 20    Nonetheless, respondent argues that petitioner was required to bring her petition to review and modify the maintenance obligation before the original, reviewable payment period expired. So respondent acknowledges that his support obligation was reviewable, but suggests that petitioner had to seek extended support a few weeks earlier than she did. The same argument made by respondent was squarely rejected in *In re Marriage of Rodriguez*, 359 Ill. App. 3d 307, 312-13 (2005).

¶ 21    In *Rodriguez*, the former husband argued that because the former wife did not petition for review of maintenance within the four-year period set for maintenance in the court's original order, the former wife was forever barred from seeking an extension of maintenance. *Id.* at 312. We rejected that argument and held that the trial court was entitled to review the maintenance award, even though the original maintenance payment period had lapsed. *Id.* at 313. In this case, petitioner filed the petition to review maintenance just weeks after the original, admittedly reviewable support obligation ended.

¶ 22    The marital settlement agreement does not state that respondent's support obligations will terminate in 60 months. It states that the obligation will endure 60 months, reviewable. That is why respondent's reliance on *Rice v. Rice*, 173 Ill. App. 3d 1098 (1988), is misplaced.

¶ 23    In *Rice*, the trial court ordered that time-limited maintenance payments be made and included no provision for review. *Id.* at 1101. In this case, we have a clear provision for review. Nothing in the marital settlement agreement states that respondent's support obligations would end after five years. There was no automatic termination clause included. The inclusion of "reviewable" after stating the duration of the original payment term is significant. In construing a contract, effect must be given to each clause and word used, without rejecting any words as meaningless or surplusage. *Hufford v. Balk*, 113 Ill. 2d 168, 172 (1986).

¶ 24    Also, as in *Rodriguez*, the settlement agreement in this case contained express termination events, none of which ever occurred. The agreement provides that the support obligation may be modified until one of the termination events occurs.

> "[T]he Unallocated Family Support provided for in Paragraph 2.0 hereof *may be modifiable by the Court*, provided that an appropriate Notice and Petition seeking modification are filed with the Court in the case between the parties *prior to the happening of any of the termination events set forth in Paragraph 2.1* hereof." (Emphasis added.)

The termination events in paragraph 2.1 are the death of either petitioner or respondent, petitioner getting remarried, or petitioner cohabitating with another person on a resident, continuing, conjugal basis. As none of those events occurred, the trial court was entitled to review the maintenance obligation just as the parties agreed. See *In re Marriage of Rodriguez*, 359 Ill. App. 3d at 312-13; see also *In re Marriage of Kuyk*, 2015 IL App (2d) 140733, ¶¶ 15-19.

¶ 25    Respondent relies on *In re Marriage of Doermer*, 2011 IL App (1st) 101567, ¶ 17, and maintains that the circumstances in that case are analogous to the circumstances in this case. They are not. In *Doermer*, our decision that the former wife was not entitled to seek maintenance after the original term expired was based on the fact that the settlement agreement contained an express provision for the termination of maintenance once the former husband paid all of the unallocated family support. *Id.* ¶¶ 4, 28. The agreement in that case also stated that the former wife would be " 'forever barred from receiving maintenance' " once the former

husband made all the unallocated maintenance payments. *Id.* ¶ 4. In this case, the marital settlement agreement had no such terms. Respondent's support obligation was "reviewable."

¶ 26 Respondent makes much of the fact that the marital settlement agreement does not use the word "maintenance" to describe his original support obligation and instead uses the phrase "unallocated family support." But, as he must, respondent acknowledges that unallocated family support is simply the phrase used to characterize both his child support obligation and his maintenance obligation to petitioner. That phrase was appropriate at the time of contracting because the parties' minor child was 13 and the 5-year support period was set to expire when she would be 18. See *Blum v. Koster*, 235 Ill. 2d 21, 35, 39 n.2 (2009). When unallocated support is used in original agreement to denote both child support and maintenance, the trial court can extend just the maintenance portion of the obligation, reducing the overall support to reflect that child support is no longer included. *Id.* at 35-36.

¶ 27 The title of Article II in the settlement agreement here states that it concerns "maintenance." Paragraph 2.2 also makes clear that "[i]t is contemplated and understood by the parties that the Unallocated Family Support Payments provided to be paid by Michael to Sandra pursuant to paragraph 2.0 hereof are intended to be alimony payments." Respondent expressly waived his right to receive maintenance from petitioner, while petitioner made no such waiver of maintenance. There is nothing in the marital settlement agreement that prohibits petitioner from seeking or the trial court from considering whether maintenance payments should be extended beyond their initial term.

¶ 28 The general waivers in the marital settlement agreement similarly fail to bar petitioner from seeking extended support. The waiver provision does not preclude the parties from pursuing rights and remedies preserved under the agreement. As discussed at length above, respondent's support obligation to petitioner was expressly made reviewable, so petitioner did not waive her right to seek extended support.

¶ 29 ## II. Award of Extended Support

¶ 30 Respondent argues that the trial court erred when it ordered him, based on the evidence adduced at trial, to pay permanent maintenance to petitioner. Although not addressed by the parties, we think it is important to restate that, when it comes to maintenance, "permanent" does not mean everlasting; it means the obligation is for an indefinite period. *In re Marriage of Shen*, 2015 IL App (1st) 130733, ¶ 84. Indefinite maintenance is commonly granted where the parties have grossly disparate earning potentials and where the marriage was lengthy. See *In re Marriage of Drury*, 317 Ill. App. 3d 201, 210 (2000) (holding that the trial court abused its discretion by terminating maintenance after 36 months when the parties were married for 29 years and there was a significant disparity in the present and future earning capacities of the parties).

¶ 31 A trial court's determination awarding maintenance is presumed to be correct. *In re Marriage of Donovan*, 361 Ill. App. 3d 1059, 1063 (2005). A trial court's decision to review or set maintenance will stand unless the trial court abused its discretion. *In re Marriage of Heroy*, 385 Ill. App. 3d 640, 650-51 (2008). An abuse of discretion occurs only when we can conclude that no reasonable person would take the view adopted by the trial court. *Id.* at 651.

¶ 32 Respondent seizes on the trial court's finding that petitioner was "rehabilitated" and argues that, because she was rehabilitated, the trial court was forbidden from awarding her continued support. However, even though the court used the term "rehabilitated" to describe its finding

that petitioner had satisfied her duty to obtain suitable employment, it is clear that the trial court found that she was nonetheless still not self-sufficient.

¶ 33 The trial court expressed in its written order that it found that petitioner's "ability to earn income was impaired by her domestic duties having foregone or delayed her education and employment." Her domestic duties allowed respondent's career to thrive, the trial court found, noting that he earned an income of around $700,000 in 2015. Petitioner was earning $9 an hour at the same point. During the marriage, petitioner also worked for respondent to help him get the insurance company he was starting off the ground—the company that enabled him to earn the notable income that he earns today. The marital settlement agreement required the court to examine all the factors for an entitlement to maintenance under the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/101 *et seq.* (West 2016)). See 750 ILCS 5/504 (West 2016); 750 ILCS 5/510 (West 2016). Petitioner's efforts at rehabilitation and obtaining suitable employment were just one factor the court was to consider under the agreement.

¶ 34 In finding that petitioner had "satisfied her obligation at rehabilitation," the trial court was not making a finding that she had achieved self-sufficiency. Instead, it explained that her efforts at rehabilitation since the divorce, namely, earning a master's degree, working full time for seven years as a teacher, and then quickly starting a new job as a sales representative after resigning her teaching position, constituted a good faith effort at self-sufficiency. Even so, the court still found that maintenance was justified because it had become clear that petitioner's earning capacity is such that "she can never achieve the level of income that would allow her to maintain the lifestyle the parties enjoyed during the marriage on her income alone." See *In re Marriage of Johnson*, 2016 IL App (5th) 140479, ¶ 93 ("Maintenance is designed to allow the recipient former spouse to maintain the standard of living enjoyed during the marriage."). But even more than that, the record evidence shows that petitioner cannot earn enough to cover her monthly expenses, which are fairly modest in consideration of the marital circumstances. The trial court also rightly considered the length of the marriage, giving "great weight to the 30 year duration of the marriage." The trial court did not abuse its discretion by finding that maintenance payments were warranted under the circumstances of this case.

¶ 35 After arguing that petitioner should not be entitled to maintenance because she is rehabilitated, respondent then argues that petitioner should not be entitled to maintenance because she failed to make a good faith effort at rehabilitation. Respondent demeans petitioner's efforts at employment, stating that "[n]o maintenance recipient has ever become self-supporting by seeking only enjoyable and unchallenging work and working only during the hours and periods of year that pleases him or her." Respondent claims that petitioner's efforts at self-support have been "apathetic." Respondent also claims that petitioner is "disinterested in becoming self-supporting," has "a sense of entitlement," and analogizes her basis for seeking maintenance to "self-imposed poverty." The trial court obviously disagreed with these characterizations of petitioner and her work and found that she had made a good faith effort at rehabilitating herself and obtaining suitable employment, considering all the facts. The trial court did not abuse its discretion in holding that petitioner had made reasonable and sufficient efforts at becoming self-supportive.

¶ 36 Respondent argues that the trial court abused its discretion in determining the amount of maintenance to which petitioner is entitled. In particular, respondent points to the amount of income the trial court imputed to petitioner as too low, and he alleges that the trial court failed to consider evidence of petitioner's passive earnings.

¶ 37    The trial court imputed an income of $46,000 to petitioner. The court found that amount to be the reasonable amount petitioner could earn from full-time employment. That amount was consistent with the evidence that petitioner earned approximately $46,000 a year as her teacher's salary.

¶ 38    To make his point that petitioner's imputed income should be higher, respondent relies on assumptions and hypotheticals. For example, respondent argues that the imputed income should be increased by raises petitioner might have received if she kept teaching, and he argues that petitioner's imputed income should include some amount as a result of her not working during the summer while she was a teacher. Respondent also argues that the trial court ignored the income petitioner would receive from dividends and interest. The trial court rejected respondent's arguments, and we find that the trial court's considerations and calculations to arrive at an amount of imputed income were reasonable and that it did not abuse its discretion. If circumstances change, respondent has the right to seek modification. See *supra* ¶ 30. But the trial court's determination was based on current *facts*, not on the type of conjecture respondent interposes here.

¶ 39    Respondent contends that petitioner is capable of supporting herself in the standard of living enjoyed during the marriage. To support his position, respondent argues that, during the period between the unallocated family support obligation lapsing and the trial for maintenance, petitioner lived as she did during the marriage. The trial court disagreed, stating that even in consideration of the assets petitioner received in the divorce and "considering the lifestyle the parties enjoyed during the marriage that even with Sandra's imputed income she can never achieve the level of income that would allow her to maintain the lifestyle the parties enjoyed during the marriage on her income alone." The amount awarded was supported by the evidence. There is nothing in the record that would permit us to find that no reasonable person could take the view adopted by the trial court.

¶ 40                                III. Prejudgment Interest

¶ 41    The trial court held that petitioner was entitled to statutory interest on the retroactive maintenance award. The trial court held that petitioner was entitled to prejudgment interest from the time the petition for maintenance was filed until the final judgment on that petition was entered—about a 40-month period. The Illinois Marriage and Dissolution of Marriage Act provides that "[a]ny maintenance obligation including any unallocated maintenance and child support obligation, or any portion of any support obligation, that becomes due and remains unpaid shall accrue simple interest as set forth in Section 505 of this Act." 750 ILCS 5/504(b-5) (West 2016).

¶ 42    Neither party has pointed us to a case in which this issue has been addressed. Under the circumstances, we hold that prejudgment interest on the retroactive maintenance award is not warranted. The statute states that interest accrues on a support obligation that "becomes due and remains unpaid." *Id.* In this case, the retroactive maintenance award did not become due and cannot be considered unpaid until the point that the trial court entered the judgment modifying and extending respondent's support obligation.

¶ 43    Respondent put forth a good faith argument that his support obligations had terminated under the terms of the marital settlement agreement. The trial court decided to extend and modify the support obligation, but respondent could not have known what the trial court would do until it acted, nor could he have known the amount to pay. The award of continued

- 8 -

maintenance was to be made in the trial court's discretion. *Blum*, 235 Ill. 2d at 36 (an order to extend or modify maintenance will not be disturbed absent a clear abuse of discretion). In fact, respondent was successful in getting the trial court to reduce the maintenance award in a motion to reconsider. So it is not as if respondent was breaching a known, static obligation. Respondent was not unjustifiably withholding money from petitioner. The obligation did not "become due" until the trial court entered a final order that it was due. The obligation was not "unpaid" until the trial court set the amount and ordered that it be paid. Therefore, the trial court erred in ordering respondent to pay prejudgment interest on the retroactive maintenance award. Nothing in this opinion affects postjudgment interest.

¶ 44                                           CONCLUSION

¶ 45         Accordingly, we affirm the trial court's order modifying and extending respondent's support obligation. We reverse the trial court's order holding that respondent is required to pay prejudgment interest.

¶ 46         Affirmed in part and reversed in part.