2020 IL App (3d) 190342

Opinion filed July 8, 2020

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2020

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the Circuit Court |
| | ) | of the 10th Judicial Circuit, |
| LAURA BURDESS, | ) | Peoria County, Illinois |
| | ) | |
|     Petitioner-Appellant, | ) | |
| | ) | Appeal No. 3-19-0342 |
|     and | ) | Circuit No. 12-D-165 |
| | ) | |
| MARK BURDESS, | ) | Honorable |
| | ) | Kim L. Kelley |
|     Respondent-Appellee. | ) | Judge, Presiding |

_____

JUSTICE O'BRIEN delivered the judgment of the court, with opinion.
Presiding Justice Lytton and Justice Wright concurred in the judgment and opinion.
_____

**OPINION**

¶ 1      The trial court granted respondent Mark Burdess a reduction in the amount of maintenance he was obligated to pay petitioner Laura Burdess and denied Laura's requests for an increase in the monthly award based on the statutory maintenance guidelines and for a retroactive increase for the time period the case was pending. We affirm.

¶ 2                         FACTS

¶ 3      Petitioner Laura Burdess and respondent Mark Burdess were married in 1985, and three children, now adults, were born during the marriage. Laura worked part time and seasonally at a

nursery, enabling her to spend time with the children and tend to the household duties. She purchased insurance for the family through her employer. Mark worked as a graphic designer at his brother's business and was the family's primary financial support. The couple owned the marital residence, which was their principal asset and subject to encumbrances.

¶ 4        In March 2012, Laura filed a petition for temporary relief, seeking maintenance, in part, followed by a petition for dissolution of the marriage, which was filed in April 2012 and again sought maintenance. Mark filed a counterpetition for dissolution, denying Laura needed maintenance. Mark also sought sole possession of the marital residence. Following a series of hearings on temporary relief, Mark was awarded sole temporary possession of the marital residence and ordered to pay all the household bills and to contribute $500 toward Laura's attorney fees. In addition, the court ordered Mark to pay $750 per month in maintenance to Laura.

¶ 5        The parties submitted financial affidavits and updates to the affidavits. Per Mark's affidavit dated March 2013, he earned a gross monthly income of $6510, with a monthly net income of $5061, and had monthly expenses of $6045. Laura's affidavit from the same time period included earned gross monthly income of $965, with a net monthly income of $251, plus $750 in maintenance for a total monthly income of $1001. Her monthly expenses totaled $3640. In his memorandum of law in preparation of trial, Mark argued that his career as a graphic designer was uncertain, as business in the industry was declining. He further argued that Laura had sufficient skills to support herself and that temporary maintenance would suffice, and he recommended an award of $600 per month payable for five years. Mark wanted to purchase the marital residence, which was appraised at $220,000 with $24,729 in equity.

¶ 6        The trial court entered a judgment of dissolution on September 18, 2013. The trial court found the house to have a value of $223,000 subject to mortgages in the amount of $198,271. The

trial court awarded the house and all the equity to Mark. In exchange for her marital interest in the home, the court awarded Laura a $9000 lump-sum maintenance payment and monthly maintenance in the amount of $1000 per month, reviewable in 24 months. Mark was ordered to pay $3500 in Laura's attorney fees. Laura moved to reconsider, seeking monthly maintenance of $2000. The trial court denied her motion.

¶ 7    In August 2015, Laura petitioned for a maintenance review. She submitted that she had sustained a work injury, was unable to work, and required additional medical procedures and surgeries in the future. She filed a workers' compensation claim for her injury and anticipated receiving a settlement. Currently, maintenance was her sole income, and she sought an increase in the monthly amount and also payment of her attorney fees. On Laura's motion, the court ordered that Mark make two $1000 payments while Laura's petition for review was pending. In October 2015 and January 2016, agreed orders were entered, continuing the $1000 maintenance payments until the petition for review was determined.

¶ 8    In July 2018, prior to a hearing on Laura's motion to review maintenance, Mark moved to terminate maintenance. He argued that he was unable to pay it because his job profitability continued to decline, he had health issues that were becoming severe, he was contemplating taking early retirement in the next few years, and he was incurring debt and depleting his savings. He further argued that Laura was capable of working. His financial affidavit dated September 2018 stated he had gross monthly earnings of $2170 with a net income of $170 after $2000 in deductions. His monthly expenses amounted to $2104, leaving him a monthly shortfall of $1934. He had approximately $1500 in his checking account and $27,252 in his savings account, which consisted of the proceeds from his sale of the marital home. Laura filed a trial memorandum in which she argued Mark's potential retirement did not constitute grounds for terminating maintenance. She

3

sought an increase of maintenance to $1500 per month based on the amended statutory guidelines. Her financial affidavit dated November 2018 indicated she was on medical leave from the nursery; had net monthly income of $1350, consisting of Social Security disability payments and maintenance; had monthly expenses of $1913; had a monthly shortfall of $563; had debts of $62,735; and had a $50 balance in her bank account.

¶ 9    A hearing took place on Laura's petition for maintenance review and Mark's petition to terminate maintenance. The court first found that the judgment of dissolution contemplated reviewable maintenance, not rehabilitative, as evidenced by the long-term, 27-year marriage and that Laura forwent her career opportunities to care for the home and children. Second, the court found the amended guidelines did not apply per *In re Marriage of Harms*, 2018 IL App (5th) 160472. It determined that both Laura and Mark were credible witnesses. It considered that Mark's business experienced a downturn and estimated his gross yearly income to be $33,666, a deduction of 50% from his previous earnings. The court further found that the decrease in Mark's income was "economically legitimate" and a "good faith reduction." The court noted that Laura earned $405 per month in Social Security disability insurance and spent $134 of that amount on health insurance. It found that, although Laura had skills, she lacked job experience due to the fact she did not work outside the home in a career capacity during the marriage. It also noted her workers' compensation claim and anticipated settlement. The court found Mark demonstrated a substantial change in circumstances that warranted modification of maintenance and reduced his monthly payment to Laura to $675. The court made the award automatically reviewable when Mark turned 62, when Laura received her workers' compensation award, or upon petition by the parties. It denied Laura's request to apply the statutory guidelines and increase the amount of maintenance. The court also denied retroactive application of the modified maintenance amount to the period of

4

time that Laura's petition was pending. The court denied her motion to reconsider, and she appealed.

¶ 10                                    ANALYSIS

¶ 11        Laura raises two issues on appeal: whether the trial court erred in reducing her maintenance and in failing to increase the maintenance amount due during the pendency of the proceedings. Although Laura was the only party to submit a brief, the record is simple, and because the issues may be decided without Mark's brief, we will reach the merits of the appeal. *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976).

¶ 12        We begin with Laura's claims regarding the trial court's downward modification of her maintenance award. She argues the statutory factors support an extension of maintenance, the amended statutory guidelines formula applies, and guidelines dictate an increase in the amount of Mark's maintenance obligation. She also argues the court misconstrued the availability of the proceeds Mark received from the sale of the marital house.

¶ 13        Section 510(a-5) of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/510(a-5) (West 2018)) concerns the modification, termination, or review of prior maintenance awards. In determining a modification, termination, or review of maintenance, the trial court must consider the factors from section 504(a) of the Act, as well as the factors in section 510(a-5) of the Act. *Id.* §§ 504(a), 510(a-5). Maintenance may be modified or terminated only when a substantial change in circumstances has been demonstrated. *Id.* § 510(a-5). A change of circumstances does not need to be established when maintenance is before the court on review. *Blum v. Koster*, 235 Ill. 2d 21, 35-36 (2009).

¶ 14        Section 504(a) requires the court to apply the following factors to determine whether a maintenance award is warranted:(1) each party's income and property, including apportioned

5

marital property and nonmarital property assigned to the party who is requesting maintenance as well as the financial obligations imposed on each party as a result of the dissolution of marriage; (2) each party's needs; (3) each party's realistic present and future earning capacity; (4) any impairment to the present and future earning capacity of the party seeking maintenance due to that person devoting his or her time to domestic duties or having forgone or delayed his or her own education, training, employment or career opportunities due to the marriage; (5) any impairment of the present and future earning capacity of the party who is being asked to pay maintenance; (6) the time needed by the party seeking maintenance to acquire appropriate training and employment and whether appropriate employment will allow the party to support himself or herself; (6.1) parental responsibility arrangements and any effects on a party's ability to seek or maintain employment; (7) the standard of living as established during the marriage; (8) the marriage's duration; (9) each party's age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, and needs; (10) the parties' incomes, including public, private, disability, and retirement income, without limitation; (11) the tax consequences to each party; (12) contributions and services by the party seeking maintenance to the other party's education, training, career, or career potential or license; (13) any valid agreement of the parties; and (14) any other factor the court finds to be just and equitable. 750 ILCS 5/504(a)(1)-(14) (West 2018).

¶ 15    The section 510(a-5) factors the court must also consider include

> "(1) any change in the employment status of either party and whether the change has been made in good faith;
>
> (2) the efforts, if any, made by the party receiving maintenance to become self-supporting, and the reasonableness of the efforts where they are appropriate;

(3) any impairment of the present and future earning capacity of either party;

(4) the tax consequences of the maintenance payments upon the respective economic circumstances of the parties;

(5) the duration of the maintenance payments previously paid (and remaining to be paid) relative to the length of the marriage;

(6) the property, including retirement benefits, awarded to each party under the judgment of dissolution of marriage *** and the present status of the property;

(7) the increase or decrease in each party's income since the prior judgment or order from which a review, modification, or termination is being sought;

(8) the property acquired and currently owned by each party after the entry of the judgment of dissolution of marriage ***; and

(9) any other factor that the court expressly finds to be just and equitable." 750 ILCS 5/510(a-5)(1)-(9) (West 2018).

¶ 16      The maintenance provisions of the Act were amended in 2015. Prior to amendment, the court used the statutory factors to determine whether to award maintenance and to decide the amount and duration. *In re Marriage of Johnson*, 2016 IL App (5th) 140479, ¶ 94 (citing 750 ILCS 5/504(a) (West 2012)). Under the amended statute, the factors are used to determine whether maintenance is appropriate, but the amount and duration of maintenance is calculated based on guideline formulas set forth in the statute. *In re Marriage of Cole*, 2016 IL App (5th) 150224, ¶ 8. The court may depart from the guidelines when appropriate. *Id.* We will not reverse a trial court's determination on review, modification, or termination of maintenance absent an abuse of discretion. *In re Marriage of Kocher*, 282 Ill. App. 3d 655, 660 (1996).

¶ 17　　　We have previously considered whether the amended maintenance guidelines as to amount and duration apply to review and modification of maintenance orders entered prior to the statutory amendment adding the guidelines and concluded they do not. See *In re Marriage of Kuper*, 2019 IL App (3d) 180094, ¶ 28. In reaching our disposition in *Kuper*, we relied on *Harms*, where the court reasoned that the amended guidelines did not apply because section 504 and 510 were distinct provisions and section 510(c) did not reference the amended guidelines. *Harms*, 2018 IL App (5th) 160472, ¶ 30. Laura argues that neither *Kuper* nor *Harms* analyzed section 504(b-8) when finding the new guidelines were inapplicable to maintenance orders entered prior to the statutory change and on review after its effective date. According to her interpretation, section 504(b-8) applies and warrants a higher maintenance award.

¶ 18　　　Section 504(b-8) states: "Upon review of any previously ordered maintenance award, the court may extend maintenance for further review, extend maintenance for a fixed non-modifiable term, extend maintenance for an indefinite term, or permanently terminate maintenance in accordance with subdivision (b-1)(1)(A) of this section." 750 ILCS 5/504(b-8) (West 2018). Section (b-1)(1)(A) includes the amount and duration guidelines. 750 ILCS 5/504(b-1)(1)(A) (West 2018).

¶ 19　　　The cardinal rule of statutory interpretation is that the court must determine and give effect to the legislature's intent. *In re Marriage of Heroy*, 2017 IL 120205, ¶ 13. The language of the statute should be given its plain and ordinary meaning. *In re Marriage of Kane*, 2018 IL App (2d) 180195, ¶ 15. A court should interpret a statute in such a way that avoids absurd results. *In re Marriage of Kasprzyk*, 2019 IL App (4th) 170838, ¶ 27 (citing *In re Jian L.*, 2018 IL App (4th) 170387, ¶ 22). We review issues of statutory interpretation *de novo*. *In re Marriage of Best*, 228 Ill. 2d 107, 116 (2008).

8

¶ 20    In both *Kuper* and *Harms*, the petitions for review and modification that the trial courts considered were filed prior to the addition of section 504(b-8), which became effective January 1, 2017. See Pub. Act 99-763 (eff. Jan. 1, 2017) (amending 750 ILCS 5/504). Here too, Laura's petition to modify and extend maintenance was filed in August 2015, which was before the statute was amended to include section (b-8). Although Mark did not file his petition to terminate maintenance until July 2018, when section (b-8) was in effect, his filing does not extend the effect of the statutory amendment to include Laura's petition. In *Kuper*, the parties were granted a judgment of dissolution in December 2013, and the wife was awarded maintenance reviewable on or after July 2016. *Kuper*, 2019 IL App (3d) 180094, ¶ 3. In August 2016, the husband petitioned to terminate or abate his maintenance obligation based on a substantial change of circumstances. *Id.* ¶ 4. The hearing on his petition was held on August 30, 2017, during which the wife filed her petition to modify or extend maintenance. *Id.* We did not consider the wife's submission of her petition midtrial to require the court to employ the January 1, 2017, statutory amendments. The parties and the trial court had proceeded on the husband's petition to terminate filed before section 504 was amended to add section (b-8), and the amended provision was inapplicable to the *Kuper* proceedings. In *Harms*, the petitions were heard in June 2016, before section 504(b-8) became effective. *Harms*, 2018 IL App (5th) 160472, ¶ 9.

¶ 21    The trial court relied on *Kuper* and *Harms* in denying Laura's motion to reconsider, finding section (b-8) was not applicable. Although we reject the reasoning the court used to reach its conclusion, we may affirm on any basis in the record. See *In re Marriage of Petrik*, 2012 IL App (2d) 110495, ¶ 33 (citing *Mutual Management Services, Inc. v. Swalve*, 2011 IL App (2d) 100778, ¶ 11 (court may affirm on any basis in the record, regardless of whether the trial court's decision was based on proper grounds)). Here, the record includes the dates of the filings and establishes

9

that section 504(b)(8) did not become effective until after the parties' petitions were filed. As in the instant case, as in *Kuper* and *Harm*, Laura filed her petition for review or to extend in August 2015, before the effective date of the section 504(b-8) amendment. Although Mark sought to terminate maintenance with a petition filed in July 2018 and the trial on both petitions did not take place until December 2018, we determine that the applicable statute was the version in effect at the time Laura moved for review. That version of section 504 did not include section (b-8), and section 510(c) directed the court only to section 504(a). Neither section 504(a) nor 510(c) referenced section 504(b-1)(1), which are the amount and duration formulas introduced in the amendments. We conclude that, when Laura sought review, the guideline formulas did not apply, and we affirm the trial court's refusal to use them.

¶ 22     We must now determine whether the trial court erred in reducing Mark's monthly maintenance obligation to Laura. Prior to and during the pendency of this proceeding, Mark paid $1000 per month in maintenance; the trial court reduced his obligation to $675. The court based the reduction on its finding that Mark established a substantial change of circumstances in that the business in which he earned his livelihood was suffering an industry-wide downturn. The court found Mark's business income experienced a significant decline in 2017 and estimated Mark's 2018 income at $33,666 based on an approximate 50% decrease in gross income since the original maintenance order was entered. It found Mark took reasonable measures to weather the economic downturn to "his" business, such as cutting employee hours and overhead, and that Mark also reduced his personal expenses. Mark sold the marital home, receiving $70,000 from its sale, of which "$21,000 [*sic*]" remained. Mark was 61 years old and could opt for early Social Security. According to the court, if Mark retired and received Social Security, his income would not greatly

change from the figure it extrapolated. The court further found Mark's medical issues marginally affected his ability to work.

¶ 23     The court found Laura to be 59 years old, with a gross annual income from unemployment insurance of $11,580, plus $12,000 annually in maintenance, for a combined gross income of $23,580. Laura had numerous health problems and received Social Security disability insurance of $405 a month, from which she paid $134 for health insurance. Laura was without any viable employment income. She had a pending workers' compensation claim but had not worked in any regular capacity since the initial maintenance award was entered. The court further found in five years Laura had not sought any part-time regular employment. Her tax returns indicated a "hobby loss," which the court found could not be sustained as a business. Laura minimized her living costs, incurred reasonable expenses, and relied primarily on maintenance for support. The court noted that Laura had been a housewife and worked part time during the marriage. Like Mark, her skills did not translate well in the current technological world.

¶ 24     Relying on those facts, the court considered the statutory factors. It found Mark's downward trajectory in his employment income was adequately explained and not due to any fault of Mark. The court felt its estimate of Mark's 2018 income was more accurate than averaging his income over a period of years. The court found Laura sat on her petition for more than three years and would have been better served having the matter heard when Mark enjoyed a greater income. The court considered that Laura could have increased her income despite her health issues and that "she made no real effort to help herself." The court noted Laura lacked any property and Mark had only approximately $21,000 [*sic*] left from the sale of the marital house. The court determined Laura had a diminished earning capacity due to devoting her time to raising the children and taking care of the family and could not fully support herself. It further determined that Mark's future

11

earning impairment was adequately considered by the court in fashioning Mark's 2018 income. It found neither party would be able to enjoy the standard of living maintained during the marriage. Based on the section 504(a) factors, the court found an award of maintenance to be appropriate.

¶ 25 The trial court then considered the section 510(a-5) factors. It again noted the downturn in Mark's business and Laura's reduction in income. The court found concerning what it described as Laura's lack of efforts to increase her income after "five years and living near the poverty line." Describing the money situation as untenable as to both Mark and Laura, the court suggested that Laura should obtain part-time employment within her capabilities. The court defined the maintenance as reviewable and not rehabilitative due to the uncertainty of Mark's business. It acknowledged Mark and Laura each had impairments to future earnings but stated they both had to rise above their circumstances and look for every source of income, including public assistance.

¶ 26 The court concluded that termination of maintenance was not appropriate, that Laura needed maintenance, and that Mark demonstrated a substantial change in circumstances warranting a modification of his maintenance obligation. The trial court reduced maintenance to $675 per month, automatically reviewable after Mark turned 62 or before that occurrence if there was a substantial change of circumstances, if Laura received a workers' compensation award, or upon petition by the parties. The trial court rejected a retroactive application of the reduced maintenance amount, finding it would be "catastrophic" to Laura. It noted both parties "sat on the review for three plus years."

¶ 27 Although we do not agree with all the trial court's findings regarding the statutory factors, we do agree that Laura was entitled to an award of maintenance and that a reduction in the monthly amount was warranted. As expressed by the trial court, there was not enough money to support both Laura and Mark. During the marriage, they relied primarily on Mark's income. Laura's

12

employment afforded flexibility for home and childcare responsibilities and supplied insurance for the family. The trial court found Mark experienced a legitimate decline in his income, which essentially halved the amount of available funds. Laura argues the downturn in Mark's industry and income was already factored into the initial maintenance award. We find no support in the record for Laura's claim. In the court's trial order initially awarding maintenance, it found reviewable maintenance was appropriate based on the statutory factors, reasonable expenses of a single person, and "considering Husband's employment may be negatively affected by the lack of business at his company." In the judgment of dissolution, the court awarded $1000 in monthly maintenance to be reviewable after 24 months. The judgment does not contain any details regarding its calculation of the amount. Laura did not present any evidence the maintenance amount was initially reduced other than the trial court's order indicating it was considering the income decline. Laura did not offer any calculations or demonstrative proof that the initial maintenance award should have been an amount greater than the $1000 a month she was awarded. On this record, we cannot determine whether the court awarded a lower amount of maintenance because of the anticipated decline in income or as a basis to make the award reviewable in two years. Without evidentiary support, we cannot accept Laura's premise that the downturn in Mark's business prospects was factored into the initial maintenance calculation.

¶ 28        In reviewing the maintenance award, the trial court found that Mark's business suffered a downturn after entry of the judgment of dissolution in 2013, which became significant in 2017. It found the trial court had initially set the award at 24 months because it found that "change was coming" in terms of Mark's income. The court found Mark to be credible and the downturn in business to be legitimate and not due to any actions on Mark's part. The court relied on Mark's business decline in estimating an annual income for him that was 50% lower than his salary the

prior year, using Mark's figures to calculate a gross income of $33,666 for 2018. It is unclear as to what evidence the trial court used to extrapolate this number. The court stated it used Mark's "figures" to calculate gross income of $33,666 for 2018. A payroll detail report indicated his monthly salary of $2000 from March 2018 through August 2018, except for two months where he earned an additional $2625, for a partial year-to-date total income of $16,250 for the six-month period from March to August 10, 2018. Mark's financial affidavit dated September 2018 stated a monthly gross income of $2170 and a net income of $170 after $2000 in deductions. Presumably, the court relied on the payroll numbers and Mark's affidavit to extrapolate and estimate Mark's 2018 salary. We consider the court's calculations to be a reasonable estimation of Mark's salary, post-business-decline.

¶ 29 Laura contests the trial court's treatment of the proceeds from the sale of the marital house. The house was awarded to Mark in the dissolution based on his request. At that time, the house was valued at $223,000 with equity of $24,729. Laura received a lump sum maintenance payment of $9000 as her share of the marital house. Mark sold the house within several years of the dissolution and netted in excess of $70,000. We find the postdissolution increase in equity suspect and disagree with the trial court's treatment of the sale proceeds. The court stated that Mark did not need to diminish his "sole remaining asset to pay maintenance." In addition, the court expressed concern that the money from the house sale was all Mark had left from the property settlement and it was not equitable to require him to use it to pay maintenance. On his September 2018 financial affidavit, Mark listed more than $27,000 in his savings account, which he explained was the remaining proceeds he received from the sale of the marital home. In contrast, Laura received $9000 in lump sum maintenance as her share of the marital home, which amount she long ago depleted. The court should have considered the proceeds as a factor relevant to the

14

maintenance review under section 510(a-5)(6) and section 504(a)(1). Its failure to do so was error. Nevertheless, we do not conclude that this error would have altered the maintenance amount calculation. The trial court predicated the amount on the income Mark had available to pay maintenance. While Mark had money in his savings account from the sale of the marital house, the funds were limited, and he, too, had to adjust to a reduced income. The court calculated that Mark's income decreased 50%, and the reduction in Laura's monthly maintenance award amounted to a decrease of 32.5%. We thus affirm the trial court's reduction in the maintenance amount due Laura.

¶ 30       Next, Laura complains that the court failed to determine what amount of maintenance she was owed during the pendency of her petition for review. She maintains she was entitled to a higher monthly award during that time period because Mark's income did not, in fact, decrease as he had told the trial court it would when a maintenance amount was originally set. According to Laura, Mark's income did not decrease in 2015, 2016, or 2017, yet he still paid a reduced amount of maintenance. She submits that she was entitled to a judgment in her favor for amounts she claimed she should have been paid based on Mark's actual income.

¶ 31       A party to a dissolution action may petition the trial court for temporary maintenance. 750 ILCS 5/501(a)(1) (West 2018). Any temporary orders entered under section 501 do not prejudice any rights of the parties that are to be subsequently adjudicated. *Id.* § 501(d)(1). In determining an award of temporary maintenance, the trial court must consider the entire financial situation of both parties. *Bellow v. Bellow*, 72 Ill. App. 3d 608, 610 (1979). An award must be based on a showing of the parties' incomes and assets and what is required to support the party seeking maintenance. *Rabin v. Rabin*, 57 Ill. App. 2d 193, 198 (1965). We review a trial court's award of temporary maintenance for an abuse of discretion. *Moore v. Moore*, 53 Ill. App. 3d 228, 230 (1977).

15

¶ 32    As discussed above, Laura did not present any evidence the trial court factored Mark's business decline into its initial maintenance award. The record lacks any information concerning the trial court's initial calculation. She did not offer any calculations of her own to indicate what the award should have been. The court's statement regarding the anticipated decline is not definitive proof Laura was awarded a reduced amount. Without proof, we will not conclude the initial award was decreased. See *In re Marriage of Landfield*, 209 Ill. App. 3d 678, 704 (1991) (wife sustained her burden to show that husband's income increased warranting an increase in maintenance).

¶ 33    Laura relies on *In re Marriage of Wojcik*, 2018 IL App (1st) 170625, to support her argument that she should have been awarded a retroactive increase in maintenance for the time period her petition was pending. *Wojcik* is distinguished. In that case, the parties' marital settlement agreement provided that the husband would pay the wife unallocated family support for 60 months and the support award was reviewable at that time. *Id.* ¶ 7. On review, the court considered the parties' financial situations and concluded that, even imputing income to the wife, she would not make enough money to live based on the standard of living established during the marriage. *Id.* ¶ 13. The husband's income had continued to increase since the initial support order was entered. *Id.* ¶ 6. At the time of the hearing, he was earning $700,000 per year, and the wife was earning $9 per hour with imputed income of $46,000. *Id.* ¶¶ 33, 37. In contrast here, Mark's income declined 50% since the original maintenance order was entered, and neither party was able to enjoy the standard of living established during the marriage.

¶ 34    In *Wojcik*, the reviewing court emphasized that the order on appeal was initially determined by the trial court based on current facts and not the husband's conjecture that the wife's imputed income should have been higher. *Id.* ¶ 38. Here, Laura submitted inadequate proof to support her

16

claim that the initial maintenance was decreased based on a decline in Mark's income and asks us to accept her claim based on speculation and conjecture. We reject her request, find Laura was not entitled to a higher maintenance award during the pendency of the review proceedings, and affirm the trial court's denial of her request to retroactively increase her maintenance award.

¶ 35                                    CONCLUSION

¶ 36        For the foregoing reasons, the judgment of the circuit court of Peoria County is affirmed.

¶ 37        Affirmed.

17

**No. 3-19-0342**

| | |
|---|---|
| **Cite as:** | *In re Marriage of Burdess*, 2020 IL App (3d) 190342 |
| **Decision Under Review:** | Appeal from the Circuit Court of Peoria County, No. 12-D-165; the Hon. Kim L. Kelley, Judge, presiding. |
| **Attorneys for Appellant:** | Jeffrey Alan Ryva, of Quinn, Johnston, Henderson, Pretorius & Cerulo, of Peoria, for appellant. |
| **Attorneys for Appellee:** | No brief filed for appellee. |