2024 IL App (2d) 220221-U
No. 2-22-0221
Order filed May 30, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| *In re* MARRIAGE OF JOHN WALTER BIBBER, | ) ) | Appeal from the Circuit Court of Kane County. |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| and | ) | No. 14-D-948 |
| | ) | |
| | ) | Honorable |
| KATHERINE HARBECK BIBBER, | ) | Charles E. Petersen and |
| | ) | Keith A. Johnson, |
| Respondent-Appellee. | ) | Judges, Presiding. |

_____

JUSTICE JORGENSEN delivered the judgment of the court.
Justices Hutchinson and Kennedy concurred in the judgment.

**ORDER**

¶ 1   *Held*: First, the supplemental bystander's report is stricken because the parties did not stipulate to it. Second, because the bystander's report that was properly submitted does not contain the trial court's findings, we presume that those findings supported the denials of both petitioner's motion to terminate or modify maintenance and his motion to reconsider.

¶ 2   Petitioner, John Walter Bibber, appeals from orders (1) denying his petition to terminate or modify maintenance and (2) striking and dismissing his amended motion under section 2-1203 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1203 (West 2020)) to reconsider the denial of his petition to terminate or modify maintenance. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4     On December 15, 2015, the trial court entered a judgment dissolving John's marriage to respondent, Katherine Harbeck Bibber. The judgment incorporated the parties' marital settlement agreement, which provided that John would pay $3700 per month to Katherine in maintenance, which was terminable on the death of either party, Katherine's remarriage, or Katherine's cohabitation with another person on a continuing conjugal basis.

¶ 5     On December 28, 2020, John filed his petition to terminate or modify maintenance. He alleged that he was 73 years old and had worked as a chemist for the same employer for 35 years. In 2019, he earned approximately $84,500 from that employment. According to the petition, "[t]he Covid-19 pandemic *** had a disastrous effect on John's employment." He was unemployed from March 19, 2020, to May 15, 2020, and was last paid by his employer on November 30, 2020, at which time he was told that it was not certain whether the business would reopen. John earned approximately $53,500 in 2020 from his employer, and he currently did not anticipate any future opportunities with that employer. His only source of income in 2021 and onward was $2779 in Social Security benefits.

¶ 6     The trial court, Judge Charles E. Petersen presiding, held an evidentiary hearing on the petition on June 3, 2021. On June 9, 2021, the court entered an order continuing the matter to July 12, 2021, for a ruling on the petition. A minute order entered on July 12, 2021, indicated that the matter was continued to August 10, 2021, for "Status of Ruling." A written order entered on August 10, 2021, stated, "Motion to Terminate/Modify Maintenance is denied. Oral Ruling made this date. *** Decision to be impounded."

¶ 7     John subsequently retained new counsel. On September 9, 2021, counsel filed, under section 2-1203 of the Code, a motion to reconsider the denial of his petition to terminate or modify

maintenance. The motion argued that the written order denying the petition did not include any findings of fact and that the trial court "apparently" did not apply the statutory factors governing termination or modification of maintenance to the facts of the case. On September 27, 2021, the trial court entered an agreed order indicating that it would e-mail to the parties "copies of the impounded findings which were verbally provided to counsel on August 10, 2021." The order also granted Katherine 28 days to respond to John's motion to reconsider. On October 25, 2021, the trial court entered another agreed order stating that the court would e-mail the impounded findings to the parties. The order also granted Katherine leave to respond to John's motion within 10 days of receiving the findings. On January 3, 2022, the trial court entered an order granting Katherine 14 days to respond to John's motion. The order stated, "The Court has indicated that it is unable to locate any findings or documents that were impounded in this matter, ***." The day after this order was entered, Katherine filed a response to John's motion. On January 20, 2022, the trial court granted John leave to file within 21 days an amended motion to reconsider. The order also granted Katherine 14 days to respond to John's amended motion to reconsider.

¶ 8     On February 9, 2022, John moved for an extension of time to file his amended motion. John alleged that, on January 7, 2022, the trial court "forwarded to Counsel for [John], via email, a Reconstructed Findings of Fact and Court Decision regarding the Court [o]rder entered on August 10, 2021[,] from the Hearing held on June 3, 2021, on newly discovered notes and documents." John noted that he had attached, as exhibit B, a copy of the referenced "Reconstructed Findings of Fact and Court Decision." Exhibit B was a document entitled "Bibber Decision," dated August 10, 2021.

¶ 9     The trial court granted the motion to extend, and, on March 23, 2022, John filed his amended motion to reconsider. Defendant attached another copy of the Bibber Decision.

Although in the form of a judicial decision, the Bibber Decision was neither signed by a judge nor file-stamped by the clerk of the court. It appears in the record only as an exhibit to various documents filed by John. Nonetheless, we will summarize its contents.

¶ 10    The Bibber Decision recited that John had lost his job in 2020 after 34 years.[1] He applied to the Department of Employment Security (DES) for unemployment benefits but was denied due to fraud. John claimed that the fraud "was not tied to him." He initially made numerous calls to challenge the denial. Having received no response, "[h]e just gave up and let it go." He did not seek reconsideration of the denial of benefits. According to the Bibber Decision, John's actions were not those "of a person who needs money and is innocent of the charge of fraud."

¶ 11    Furthermore, the Bibber Decision recited that John claimed to rent a house from a 71-year-old woman. John initially indicated that he paid the $1000 monthly rent by check or debit card. However, he was unable to show those payments on his bank statements. He then claimed that he "paid $950 [monthly] rent in cash," but his account statements did not show withdrawals in that amount. He did not own a car, but his "landlady" allowed him to use hers. The Bibber Decision concluded that John was "[e]ssentially *** living [rent] free." The Bibber Decision further found that discrepancies in John's testimony about his tax returns "effect[ed]" [*sic*] his credibility. According to the Bibber Decision, Katherine was suffering serious medical conditions and had "the financial and physical need for *** maintenance." The Bibber Decision concluded that "[John was] not credible about his income and [Katherine was] credible and in need of *** maintenance."

¶ 12    In his amended section 2-1203 motion to reconsider, John argued that, in denying his petition to terminate or modify maintenance, the trial court "failed to properly apply existing case

---

[1]As noted, John stated in his petition to terminate or modify maintenance that he was with the employer for *35* years.

law to the facts" and "failed to apply, or inappropriately applied, the statutory factors contained within section 504(a) of the [Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/504(a) (West 2018))]." According to the motion, the trial court "misconstrued [John's] frustration in attempting to resolve the Fraud issue with the [DES] as a lackadaisical response to an otherwise serious issue in procuring essential Unemployment Benefits, so as to bolster his meager Social Security Benefits in order to pay for his current Maintenance obligations towards [Katherine]." He further argued that he was "overwhelmed" by testifying at the hearing on his petition and became flustered while explaining his rent arrangements and living expenses. John asserted that the trial court erred by discounting his testimony and "jump[ing] to a conclusion that [John] *** lived 'rent free.' " According to the motion, the trial court "misconstrued" aspects of John's tax recordkeeping as affecting his credibility and erred by failing to consider John's financial ability to pay maintenance. In his attached affidavit, John averred that, after the trial court's denial of his motion to terminate or modify maintenance, DES reconsidered its decision and awarded John unemployment benefits.

¶ 13    Katherine filed a motion, ostensibly pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2020)), to strike and dismiss John's amended motion to reconsider. She argued that a motion to reconsider is proper when the law has changed since the decision or there is newly discovered evidence that existed, but was unavailable, at the time of the decision. She further argued that John's motion was not based on any changes in the law or newly discovered evidence. On May 9, 2022, the trial court entered an order stating, in pertinent part:

> "This matter becoming [*sic*] before the Court for hearing on [Katherine's] Motion to Strike and Dismiss [John's] Amended Section 2-1203 Motion for Reconsideration and/or Clarification of Order of August 10, 2021; both parties [*sic*] counsel being present and

proceeding to [a] hearing on [Katherine's] Motion; the Court having heard the arguments of both parties and it is hereby ordered:

1. [Katherine's] Motion to Strike and Dismiss *** is hereby granted.

2. Based upon granting the Motion to Strike and Dismiss, [John's] *** Motion for Reconsideration *** is hereby denied."

John filed a timely notice of appeal.

¶ 14    The record on appeal contains no verbatim transcripts of any of the relevant proceedings. However, we granted John a series of extensions of time to file a bystander's report or an agreed statement of facts. Our November 1, 2022, order provided that the "bystander's report *** is due in the circuit court by November 22, 2022." On that date, John filed in the trial court a motion for approval of a proposed bystander's report. The attached proposed bystander's report stated that, on June 3, 2021, the trial court conducted an evidentiary hearing on John's petition to terminate or modify maintenance. The proposed bystander's report stated that both parties testified, but it did not describe the substance of the testimony. According to the proposed bystander's report, on July 12, 2021, "the court made certain oral findings of law and fact before both counsels, without either litigant being present." The proposed bystander's report did not describe the substance of the trial court's findings. Finally, the proposed bystander's report indicated that Katherine's motion to strike and dismiss John's amended motion to reconsider was heard on May 9, 2022. According to the proposed bystander's report, the trial court found that the reversal of the denial of John's unemployment benefits was not newly discovered evidence and that John failed to set forth "any allegations that would allow his [amended] motion to reconsider to proceed."

¶ 15    John's motion for approval of the proposed bystander's report claimed that Katherine's attorney approved the proposed bystander's report by e-mail. John attached a copy of that e-mail,

in which Katherine's attorney stated, "Although there are significantly more facts relevant to the matters that were pending with the Court, what you wrote *** was accurate." John noticed the motion for a hearing on December 8, 2022.

¶ 16    However, when John filed his motion to approve the proposed bystander's report, Judge Petersen had been reassigned from the Family Law division to the Traffic division. Judge Keith A. Johnson was assigned to this case on November 28, 2022. Neither the parties nor their counsel appeared at the hearing on the motion to approve the proposed bystander's report. John—aware that Judge Petersen no longer had the case but evidently unaware that Judge Johnson now had it— asked this court on December 19, 2022, for another extension of time to file the bystander's report, claiming he needed to ask Judge Petersen how to proceed now that he had been reassigned. We entered an order stating that "the circuit [court] clerk shall submit the bystander's report (if properly certified) *** as a supplement to the record by January 26, 2023." On December 19, 2022, Judge Johnson sent an e-mail to counsel for both parties, explaining that he had been assigned to the case and requesting confirmation that the parties agreed to the proposed bystander's report. John's attorney replied to the e-mail, but Katherine's attorney did not. On December 21, 2022, Judge Johnson approved the bystander's report.

¶ 17    On December 28, 2022, John noticed his motion to approve the bystander's report for a hearing before Judge Johnson on January 18, 2023. (Presumably, John was unaware that Judge Johnson had already approved the proposed bystander's report.) On January 18, 2023, Judge Johnson granted Katherine leave to file a motion to supplement the bystander's report. Katherine filed her motion to supplement, and John filed a response, noting that Katherine had failed to timely file proposed amendments to his proposed bystander's report as required under Illinois Supreme Court Rule 323(c) (eff. July 1, 2017). On March 24, 2023, Judge Johnson granted

Katherine's motion and approved Katherine's supplemental bystander's report. Judge Johnson reasoned, in part, that John had not complied with Rule 323(c), because he did not present his proposed bystander's report within the timeframe allowed by that rule. (Judge Johnson apparently overlooked that we granted John a series of extensions of time to present the bystander's report.) Judge Johnson concluded that "[f]airness and the interests of justice" required that he either (1) vacate the bystander's report and begin the approval process anew or (2) approve the supplemental bystander's report. John acceded to the second option.

¶ 18    John subsequently moved to file a supplemental record containing, *inter alia*, both the bystander's report and the supplemental bystander's report. We granted the motion.

¶ 19                                  II. ANALYSIS

¶ 20    John argues on appeal that the trial court erred by (1) denying his petition to terminate or modify maintenance, (2) granting Katherine's motion to strike his amended motion to reconsider the denial of the petition, and (3) approving Katherine's supplemental bystander's report.

¶ 21    We first consider whether the trial court erred in approving the supplemental bystander's report. Rule 323(c) provides, in pertinent part:

> "If no verbatim transcript of the evidence of proceedings is obtainable the appellant may prepare a proposed report of proceedings from the best available sources, including recollection. *** The proposed report shall be served on all parties within 28 days after the notice of appeal is filed. Within 14 days after service of the proposed report of proceedings, any other party may serve proposed amendments or an alternative proposed report of proceedings. Within 7 days thereafter, the appellant shall, upon notice, present the proposed report or reports and any proposed amendments to the trial court for settlement and approval. The court, holding hearings if necessary, shall promptly settle,

certify, and order filed an accurate report of proceedings. Absent stipulation, only the report of proceedings so certified shall be included in the record on appeal." Ill. S. Ct. R. 323(c) (eff. July 1, 2017).

¶ 22 Contrary to the trial court's finding, John adhered to this procedure. Katherine, however, did not. The record shows that John timely served Katherine with the proposed bystander's report and the motion to approve it. However, the record does not show that Katherine availed herself of the opportunity to serve John with proposed amendments or an alternative bystander's report. John's attorney evidently misconstrued the e-mail from Katherine's attorney as signifying her approval of the proposed bystander's report.[2] Yet, when John moved for approval of the bystander's report based on that e-mail, Katherine did not object. We cannot agree with the trial court that this process was unfair to Katherine.

¶ 23 Our supreme court rules make no provision for submission of a supplemental bystander's report, and we are unaware of any authority permitting submission of a supplemental bystander's report except by stipulation of the parties. See *In re Parentage of K.E.B.*, 2014 IL App (2d) 131332, ¶ 14 n.1. John agreed to approve the supplemental bystander's report only because the trial court indicated that, if John declined, the court would vacate its approval of John's proposed bystander's report. The trial court erred in forcing John to choose between those options. The record shows that, when the trial court entered its March 24, 2023, order imposing that choice, John had already served Katherine with his proposed bystander's report and the trial court had

---

[2]As noted, Katherine's attorney stated, "Although there are significantly more facts relevant to the matters that were pending with the Court, what you wrote *** was accurate." We cannot construe this as an unequivocal acceptance of the proposed bystander's report.

already approved the report. Moreover, if the circuit clerk had complied with our orders, John's report would have been filed with this court before March 24, 2023. The trial court, having already acted without authority in disrupting the schedule for filing the bystander's report in this court, threatened to disrupt it further by starting the approval process anew. Under these circumstances, we cannot regard John's choice to accept the supplemental bystander's report as a stipulation to it. Therefore, we strike the supplemental bystander's report.

¶ 24    We next consider whether the trial court erred in denying John's petition to terminate or modify maintenance. Termination or modification of maintenance is governed by section 510 of the Act (750 ILCS 5/510 (West 2018)). Section 510(a-5) (*id.* § 510(a-5)) provides, in pertinent part:

> " (a-5)An order for maintenance may be modified or terminated only upon a showing of a substantial change in circumstances. *** In all such proceedings, as well as in proceedings in which maintenance is being reviewed, the court shall consider the applicable factors set forth in subsection (a) of Section 504 and the following factors:
>
> (1) any change in the employment status of either party and whether the change has been made in good faith;
>
> (2) the efforts, if any, made by the party receiving maintenance to become self-supporting, and the reasonableness of the efforts where they are appropriate;
>
> (3) any impairment of the present and future earning capacity of either party;
>
> (4) the tax consequences of the maintenance payments upon the respective economic circumstances of the parties;

(5) the duration of the maintenance payments previously paid (and remaining to be paid) relative to the length of the marriage;

(6) the property, including retirement benefits, awarded to each party under the judgment of dissolution of marriage, judgment of legal separation, or judgment of declaration of invalidity of marriage and the present status of the property;

(7) the increase or decrease in each party's income since the prior judgment or order from which a review, modification, or termination is being sought;

(8) the property acquired and currently owned by each party after the entry of the judgment of dissolution of marriage, judgment of legal separation, or judgment of declaration of invalidity of marriage; and

(9) any other factor that the court expressly finds to be just and equitable."

The factors under section 504(a) of the Act (*id.* § 504(a)) include, *inter alia*, the income, property, and needs of each party; the realistic earning capacity of each party; any impairment of the earning capacity of the party seeking maintenance due to that party devoting time to domestic duties during the marriage; the time needed to enable the party seeking maintenance to acquire appropriate education, training, and employment; the standard of living during the marriage; the age, health, occupation, sources of income, and the needs of each party; all sources of private and public income including, without limitation, disability and retirement income; the tax consequences of each party; the duration of the marriage; contributions by the party seeking maintenance to the education and training of the other spouse; any valid agreement between the parties; and any other factor that the court finds to be just and equitable.

¶ 25    We have observed that "[a] substantial change in circumstances means that either the needs of the receiving spouse have changed or the ability of the other spouse to pay has changed." *In re*

*Marriage of Osseck*, 2021 IL App (2d) 200268, ¶ 47. A substantial change of circumstances, in itself, does not require modification or termination of maintenance. *Id.* ¶ 48. Rather, a finding of a substantial change in circumstances is merely a prelude to consideration of the factors outlined in sections 504(a) and 510(a-5). See *id.*

¶ 26 Section 510(c-5) of the Act (750 ILCS 5/510(c-5) (West 2018)) provides: "In an adjudicated case, the court shall make specific factual findings as to the reason for the modification as well as the amount, nature, and duration of the modified maintenance award." The trial court's determination on whether to terminate or modify maintenance will not be reversed on appeal absent an abuse of discretion. *In re Marriage of Burdess*, 2020 IL App (3d) 190342, ¶ 16.

¶ 27 John argues that the trial court failed to apply the factors outlined in sections 504(a) and 510(a-5). John's argument appears based on the absence of written findings in the trial court's August 10, 2021, order. Indeed, section 510(c-5) requires the trial court to make specific factual findings, but John cites no authority that those findings must be in writing. John's argument that the trial court failed to make the requisite findings is otherwise unsupported by the record. Indeed, John's bystander's report states that, at the hearing on his petition to terminate or modify maintenance, the trial court "made certain oral findings of law and fact[.]" Indeed, the report does not supply any detail regarding the trial court's findings, but that omission must be held against John. It is well established that the appellant

> "has the burden to present a sufficiently complete record of the proceedings at trial to support a claim of error, and in the absence of such a record on appeal, it will be presumed that the order entered by the trial court was in conformity with law and had a sufficient factual basis." *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984).

In applying this rule, we assume that a bystander's report is materially complete on the points it addresses. *People v. Majka*, 365 Ill. App. 3d 362, 368 (2006). However, John's bystander's report cannot be considered complete concerning the trial court's findings, given that it contains no description of those findings. Because there is no dispute that the trial court made findings at the hearing on the petition, we must assume that those findings sufficiently supported its decision.

¶ 28 Finally, we consider whether the trial court erred by granting Katherine's motion to strike and dismiss John's section 2-1203 motion to reconsider. We reject this argument for the same reasons we have rejected John's challenge to the denial of his petition to terminate or modify maintenance.

¶ 29 We must first recharacterize the disposition of Katherine's motion. She filed her motion under section 2-615(a) of the Code (735 ILCS 5/2-615(a) (West 2020)), which provides that "[a]ll objections to *pleadings* shall be raised by motion." (Emphasis added.) As we have explained, "[a] pleading *** consists of a party's formal allegations of his claims or defenses." *In re Marriage of Sutherland*, 251 Ill. App. 3d 411, 413 (1993). In contrast, "[a] motion is an application to the court for a ruling or an order in a pending case." *Id.* John's petition to terminate or modify maintenance was a pleading. Accord *id.* at 414 (petition to increase child support was a pleading). On the other hand, John's motion to reconsider under section 2-1203 was a motion. Accord *id.* (section 2-1203 motion to reconsider dismissal of petition for increase of child support was a motion). Because section 2-615 applies only to *pleadings*, it is improper to strike a *motion* under section 2-615. *Id.* When a trial court grants a section 2-615 motion to strike a section 2-1203 motion to reconsider, we treat the court's order as denying the motion rather than striking. *Id.* "The purpose of a motion to reconsider is to bring to a court's attention (1) newly discovered evidence, (2) changes in the law, or (3) errors in the court's previous application of existing law." *Liceaga v. Baez*, 2019 IL

App (1st) 181170, ¶ 25. We typically review a ruling on a motion to reconsider for an abuse of discretion. See *G.M. Sign, Inc. v. Pennswood Partners, Inc.*, 2015 IL App (2d) 121276-B, ¶ 27 (recognizing that a ruling on a motion to reconsider the entry of summary judgment is reviewed *de novo*).

¶ 30     In his amended motion to reconsider, John contended that the trial court "misconstrued [his] frustration in attempting to resolve the Fraud issue with the [DES] as a lackadaisical response to an otherwise serious issue in procuring essential Unemployment Benefits, so as to bolster his meager Social Security Benefits in order to pay for his current [m]aintenance obligations[.]" John also contended that, although he was highly educated, "he simply was overwhelmed by testifying in person in open [c]ourt [at the hearing on the petition to terminate or modify maintenance]" and became flustered when trying to explain his monthly expenses, including rent. According to John, the trial court "simply jumped to conclusions" in finding that John's testimony was not credible. John also argued that the trial court improperly concluded that John's lack of certainty as to his tax recordkeeping undermined his credibility. The problem with addressing these arguments from our vantage point is that, given the condition of the record, we cannot be sure the trial court even made the challenged findings. There is no dispute that the trial court made *some* findings in denying John's petition to terminate or modify maintenance; we can only presume that those findings were sufficient to support the trial court's judgment.

¶ 31     John also argues that the trial court failed to consider whether Katherine needed the maintenance ordered in the judgment of dissolution and how much maintenance John could afford to pay. According to John, the trial court did not consider the factors of section 504(a) of the Act. Again, based on the condition of the record, we must presume that the trial court made findings on all pertinent factors and that those findings were sufficient.

¶ 32    John further contends that his amended motion to reconsider was based on newly discovered evidence, to wit, that the DES ultimately reversed its decision that John's claim for benefits was fraudulent. We have held that, for purposes of a motion to reconsider, "newly discovered evidence" means "evidence [that] was in existence at the time of trial *or pertains to facts in existence at the time of trial*." (Emphasis in original.) *In re Marriage of Wolff*, 355 Ill. App. 3d 403, 410 (2005) (citing *United States v. McGaughey*, 977 F.2d 1067, 1075 (7th Cir. 1992)). Here, the reversal of the finding of fraud pertains to a fact in existence at the time of the hearing on John's petition to terminate or modify maintenance, and the trial court erred in concluding that it was not newly discovered evidence. Nonetheless, absent a sufficient record of the proceedings on John's petition to terminate or modify maintenance, it is impossible to determine whether that evidence could have had any appreciable effect on the outcome of those proceedings. Consequently, it is impossible to determine whether the evidence would have affected the trial court's ruling on the amended motion to reconsider. Accordingly, John has failed to establish that denying the amended motion to reconsider was an abuse of discretion.

¶ 33                        III. CONCLUSION

¶ 34    For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 35    Affirmed.