2020 IL App (2d) 190083-U
No. 2-19-0083
Order filed February 3, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| *In re* MARRIAGE OF JOANN O'HARA, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Petitioner-Appellant, | ) ) | |
| and | ) ) | No. 16-D-667 |
| DAVID O'HARA, | ) ) ) | Honorable René Cruz, |
| Respondent-Appellee. | ) | Judge, Presiding. |

JUSTICE BRIDGES delivered the judgment of the court.
Justices Jorgensen and Hudson concurred in the judgment.

**ORDER**

¶ 1   *Held*: The trial court erred in modifying the amount of death benefit coverage for maintenance, because respondent never filed a motion to modify. Petitioner acquiesced in the manner the trial court conducted the hearing on her contempt petition, so any error in not receiving a formal hearing on the petition was invited error. Therefore, we affirmed in part, reversed in part, and remanded.

¶ 2   Petitioner, Joann O'Hara, and respondent, David O'Hara, were married on August 27, 1977, and their marriage was dissolved on December 19, 2017. In November 2018, petitioner filed a petition for rule to show cause why respondent should not be held in contempt for failing to have a $300,000 death benefit coverage for maintenance, as required by the modified dissolution

judgment. Following a hearing, the trial court found that respondent was not in contempt. It ruled that he was to maintain death benefits in the amount of $200,000, with that total declining monthly based on maintenance payments.

¶ 3   On appeal, petitioner argues that the trial court erred in: modifying the level of death benefit coverage without a showing of a substantial change in circumstances; not conducting a meaningful formal hearing on her petition for contempt; treating her petition for contempt as a motion to modify; and denying her motion to reconsider. We affirm in part, reverse in part, and remand the cause.

¶ 4                                    I. BACKGROUND

¶ 5   The parties' December 19, 2017, dissolution judgment required that respondent pay petitioner maintenance of $9,800 per month. The judgment provided as follows regarding life insurance to secure maintenance:

> "Pursuant to 750 ILCS 5/504, DAVID shall secure and maintain a life insurance policy naming himself as the insured and JOANN as beneficiary and trustee, having a minimum face value of $1,000,000. Said policy shall be effective from the date of entry of the herein Judgment, for so long as DAVID has a duty to pay maintenance to JOANN. Said obligation to maintain life insurance shall constitute a lien on the estate of DAVID to the extent of the required face value prescribed above[.]"

¶ 6   Respondent filed a posttrial motion in which he argued that the provision was contrary to statute because in order to impose such an obligation, there must have been evidence presented regarding what insurance was currently in effect, the premium cost, and respondent's insurability at age 67. He additionally argued that considering the total assets awarded to petitioner, there was

no need to provide life insurance to secure a maintenance obligation that in all likelihood would not extend beyond 24 months.

¶ 7    A hearing on the posttrial motion took place on February 6, 2018. On the issue of life insurance, respondent argued that the trial court had not received evidence that would have allowed it to make findings about the premium costs of the insurance policy and who should pay for it. He further argued that $1 million was not representative of what would be necessary to secure maintenance in this case because he was 67 years old at the time of trial and had just turned 68. Respondent stated that he had a three-year employment agreement that started on January 1, 2017, and would be ending on December 31, 2019.  The trial court then stated:

> "With respect to the life insurance having reviewed the section of the statute that was provided in the [*sic*] 5/504(f)[,] it looks like I will modify the judgment to indicate that the existing life insurance policy that [respondent] had that he will make [petitioner] the beneficiary of $300,000 of the existing amount. If he does not have coverage in his existing policy to cover the $300,000 that [*sic*] he should cooperate pursuant to paragraph (f)(2) with [petitioner] obtaining a policy. I think [respondent] is correct I don't have enough information to make the determination or findings for [respondent] to get a new policy of his own."

¶ 8    On February 9, 2018, the trial court entered a written order modifying the dissolution judgment as follows:

> "Life Insurance: The provision of the Judgment for Dissolution of Marriage requiring Respondent to secure and maintain life insurance to secure maintenance is modified to provide that Respondent shall maintain [his] existing life insurance naming Petitioner as beneficiary for an amount not less than $300,000.00 and if said coverage

expires due to Respondent's age, Respondent shall provide substitute security for maintenance of $300,000.00 payable upon his death to Petitioner that is satisfactory to Petitioner, for so long as he has an obligation to pay maintenance to Petitioner."

The trial court also modified the income calculation for maintenance, resulting in petitioner receiving $9,350 per month.

¶ 9     On September 6, 2018, petitioner filed a petition for indirect civil contempt against respondent, alleging that respondent had refused to provide her with documentation that he had a life insurance policy naming her as the beneficiary. A rule to show cause issued on September 13, 2018. In his response, respondent admitted that he did not have a life insurance policy with petitioner as the beneficiary, but he argued that he had provided substitute security for his remaining maintenance obligation. The trial court entered an agreed order on October 17, 2018, that stated that the hearing on the petition for rule to show cause was continued to November 1, 2018, and that "if the parties are unable to agree to substitute security for Respondent's maintenance obligation[,] the issue of establishing adequate substitute security shall also be addressed by the Court."

¶ 10    At the hearing on November 1, 2018, petitioner's attorney stated that she would like to call witnesses for her petition. Respondent's attorney stated that they could "probably just stipulate to the facts" and that there "may be an issue for the Court to resolve but there's no basis for contempt." He continued: "But if I can offer a stipulation, if counsel disagrees with anything I guess we can have a hearing on those points." The trial court responded: "Okay." Respondent's attorney stated that as a result of respondent's posttrial motion, the trial court had revised the insurance provision to provide that respondent would keep petitioner as the beneficiary of the insurance policy that he had in place, up to $300,000, and that if that policy lapsed or became

unaffordable "because the evidence was it was a 15-year level term and then when it expired at his age he would not be able to replace it or continue it." The attorney stated that this scenario came to pass, and respondent arranged with his employer to assign a benefit to petitioner of $10,833.33 per month from the date of his death until December 31, 2019, when his employment agreement was set to terminate. The attorney stated that petitioner rejected the offer, "so that's why the order says it's also for the Court to decide what security is required because the *** ruling on the posttrial motion was he would offer substitute security acceptable to" petitioner. The attorney stated that respondent was not in contempt because he maintained the life insurance through the termination of the policy, and he offered substitute security.

¶ 11    Respondent's attorney asked petitioner's attorney if there was anything that he said that was incorrect. She stated that the order required that the life insurance or substitute security total $300,000, but that the substitute security he offered totaled half of that amount. Petitioner's attorney stated there was no provision automatically reducing the security amount. Respondent's attorney said that the $300,000 was based on how much longer respondent was expected to work at the time of trial, such that each month that he paid maintenance of $9,350, the need for security was $9,350 lower. Petitioner's attorney disagreed, stating that there was no indication at the time of trial that respondent would not be ordered to pay maintenance upon his retirement. She also disagreed that a new insurance policy was cost-prohibitive, stating that she did not know that he applied for any. Petitioner's attorney further stated that respondent had assets of over $300,000 and could put that amount in a money market account naming petitioner as the beneficiary. She confirmed that petitioner rejected the offer for the employer to pay her $10,833.33 per month.

¶ 12    The trial court stated:

"Now I hear that there's some sort of counter as to what other opportunities there would be to do something. I don't *** know if the rule got filed immediately after it was rejected or what. I don't really see that this is a rule, what this really is is a motion to determine what the substitute security for maintenance should be. So I don't see that this falls into a local rule to show case, willful behavior I think it's just a disagreement as to what we think the reasonable – or substitute security should be, which means that there is more information that needs to be determined."

The trial court then stated that petitioner was proceeding on the rule, and it questioned whether she was asking the trial court to determine whether respondent's offer of a security interest through his employer was substitute security for maintenance.

¶ 13    Respondent's attorney stated that they agreed on the last court date that even if respondent was not found in contempt, they would like to resolve the issue. He further stated that he thought that the only dispute was over the amount of the substitute security. The attorney stated that he wished he had asked at the time of the posttrial motion to make the security a declining amount for each month that respondent remained employed.

¶ 14    Petitioner's attorney stated that there should not be a disagreement over the amount because the trial court had set the amount at $300,000. She stated that if it was a substitute security for a $300,000 life insurance policy, the substitute security should equal $300,000.

¶ 15    The trial court stated that based on the change in circumstances of the insurance policy expiring, it was comfortable setting the security amount on what was owed between that date and the end of the employment contract in December 2019, after subtracting $50,000 for an insurance policy that respondent currently had through his employer.

¶ 16　According to a certified bystander's report, the court reporter then left the courtroom for the day. Petitioner's attorney drafted an order that stated that respondent would secure a life insurance policy or other form of security in the amount of $200,000. The security outlined by the trial court was $50,000 in life insurance through respondent's employer, plus respondent naming petitioner as the designated representative to receive $10,833.33 per month through December 2019, per the assignment of residual compensation provided for in respondent's employment agreement. The attorneys approached the bench to discuss the draft order with the trial court. Respondent's attorney stated that he feared that there would be further litigation between the parties after the next maintenance payment if the draft order was entered. He told the trial court that the life insurance obligation and security should be a diminishing amount based upon the amount of time left for respondent's maintenance obligation; that respondent's employer-based security diminished with each paycheck respondent received; that the attorney wished that he had made this argument during the first posttrial hearing on the issue; that he had objected to the form of the order drafted by petitioner's attorney after the first posttrial hearing; that the order as drafted would be a windfall to petitioner if respondent died the next day; and that the parties would have to return to court on the same issue in the future. Petitioner's attorney stated that respondent's attorney's position differed from what the trial court had just ruled, but the trial court agreed with respondent's attorney. The trial court ordered that the draft order be modified to reflect a diminishing amount of the requirement for the security, over petitioner's attorney objection.

¶ 17　The trial court's written order stated that: (1) respondent was found not in contempt of the December 19, 2017, dissolution judgment and the February 9, 2018, order; and (2) respondent was to maintain a combination of life insurance policies and other forms of security in the amount of $200,000 naming petitioner as the beneficiary, so long as he had a duty to pay maintenance, and

"declining monthly in accordance with terms of assignment." Specifically, respondent was to maintain a $50,000 life insurance policy through his employer with petitioner as the beneficiary, and he was to name petitioner as his designated representative to receive $10,833.33 per month from his employer through December 2019 as described in the assignment of residual compensation in the employment agreement dated October 5, 2018.

¶ 18 Petitioner filed a motion to reconsider on November 28, 2018. She argued that respondent was clearly in contempt of court, and that the issue of modifying the December 17, 2018, judgment or February 9, 2018, order was not before the court. She also argued that there was no substantial change in circumstances since February 9, 2018, to justify a modification. The trial court denied the motion on December 11, 2018.

¶ 19 Petitioner timely appealed. She thereafter obtained permission from this court to file the aforementioned bystander's report. See *supra* ¶16.

¶ 20                                      II. ANALYSIS

¶ 21 Petitioner first argues that the trial court erred in modifying the level of death benefit coverage from $300,000, which was the amount set in the February 9, 2018, order, to $200,000. She notes that neither party appealed from that order or the dissolution judgment. According to petitioner, the February 9, 2018, court order unambiguously provides that respondent is to have a life insurance policy or substitute security of $300,000.

¶ 22 Petitioner further contends that there was not a substantial change in circumstances from February to November 2018 to justify a modification. She argues that respondent is still employed by the same company, still earns the same salary, and is still receiving the same monthly cell phone

and car allowance.[1] She maintains that the October 17, 2018, agreed order simply reflected the understanding that the parties would attempt to decide on adequate substitute security, as opposed to the amount of the security.

¶ 23    Petitioner maintains that although respondent's attorney argued that her receiving $300,000 in life insurance benefits upon his death would be a windfall, this would not constitute a substantial change in circumstances. She argues that respondent's position is also without merit because life insurance as a security for respondent's maintenance obligation was always meant to be available to her upon his death. Petitioner highlights that the original dissolution judgment stated that the "obligation to maintain life insurance shall constitute a lien on the estate of [respondent] to the extent of the required face value prescribed above[.]" Petitioner cites *In re Marriage of Walker*, 386 Ill. App. 3d 1034, 1045 (2008), which states that the Illinois Marriage and Dissolution of Marriage Act (Marriage Act) (750 ILCS 5/101 *et seq.* (West 2018)) does not prohibit payments during a payor's life that may have an effect after the payor's death.

¶ 24    Petitioner argues that respondent's attorney misrepresented to the trial court that the $300,000 figure came from the amount of total maintenance respondent was expected to pay in February 2018, such that the obligation for security decreased by the amount of maintenance paid each month. She argues that he further misrepresented to the trial court that respondent's maintenance obligation would terminate in December 2019. Petitioner argues that, to the contrary, she was awarded permanent maintenance. Petitioner argues that respondent's estate is much greater than hers when considering his nonmarital property, and he continues to receive income

_____

[1] Petitioner's brief was filed on June 14, 2019; evidence was introduced at the original trial that respondent's employment agreement was set to terminate on December 31, 2019.

from employment and other sources, so it is unlikely that the trial court would terminate her maintenance even upon respondent's retirement.

¶ 25    Petitioner relatedly argues that respondent never filed a motion to modify the obligation, so the trial court lacked the authority to change her petition for indirect civil contempt to a motion to modify. She points out that "the provisions of any judgment respecting maintenance or support may be modified only as to installments accruing subsequent to due notice by the moving party of the filing of the motion for modification." 750 ILCS 5/510(a) (West 2018). She also cites *Ligon v. Williams*, 264 Ill. App. 3d 701, 707 (1994), where the appellate court stated, "The court's authority to exercise its jurisdiction and resolve a justiciable question is invoked through the filing of a complaint or petition." Petitioner argues that the pleading before the trial court was a petition for indirect civil contempt and not a motion to modify the February 9, 2018, order.

¶ 26    Petitioner additionally argues that the trial court erred in not conducting a meaningful formal hearing on her petition, depriving her of due process. She maintains that at no time during the November 1, 2018, proceedings did her counsel stipulate to any of respondent's attorney's statements. Petitioner argues there was no evidence presented to the court on the "assignment of benefits" document discussed by respondent's attorney. She highlights that the trial court's November 1, 2018, order states that the "assignment of benefits" document was dated October 5, 2018. Petitioner argues that this was one month after she filed her petition for indirect civil contempt, showing that it was clearly a last-minute attempt by respondent to avoid a finding of contempt.

¶ 27    Finally, petitioner argues that the trial court erred in denying her motion to reconsider, based on her above-mentioned arguments.

¶ 28    Respondent argues in response that before the November 1, 2018, hearing, it was already a matter of record that the existing life insurance policy referenced in the February 9, 2018, order had expired on June 27, 2018; respondent points to a copy of the policy in the trial exhibits. He similarly testified at the dissolution trial that it was a $1 million, 15-year term policy that expired in July 2018. Respondent argues that petitioner alleged only that he had failed to provide proof that he designated her the beneficiary of that existing life insurance policy, but all of the evidence in the record establishes that the policy had expired before petitioner filed the petition. According to respondent, the October 17, 2018, agreed order contemplated that the November 1, 2018, hearing would address the issue of security for respondent's maintenance obligation, rather than the status of the expired life insurance policy.

¶ 29    Respondent maintains that at the November 1, 2018, hearing, petitioner's attorney was given the opportunity to reject the proposed stipulation of facts, but the only objection she made was to assert that if respondent did not have a life insurance policy with a death benefit of $300,000, then he would be required to provide substitute security in that amount. Respondent argues that she did not contest that the life insurance policy referenced in the February 9, 2018, order had not expired, nor did she assert any basis for finding him in contempt for failing to maintain the policy beyond the 15-year term.

¶ 30    Respondent argues that the agreed order's terms clearly contemplated the trial court considering a modification of the life insurance provision to provide substitute security for his maintenance obligation. He asserts that petitioner's only real objection to the process followed at the November 1, 2018, hearing is that the trial court declined to accept her argument that the substitute security should be in the full amount of $300,000. Respondent argues that under the doctrine of invited error, petitioner cannot agree to the trial court modifying the substitute security

provision and then complain that the trial court lacked the authority to modify the amount. See *LaSalle Bank, N.A. v. C/HCA Development Corp.*, 384 Ill. App. 3d 806, 820 (2008) (under the doctrine of invited error, a party may not ask to proceed in one manner and then later argue that the course of action was in error). Respondent argues that section 504(f)(2) of the Marriage Act (750 ILCS 5/504(f)(2) (West 2018)) clearly contemplates security for maintenance being ordered in a "descending" amount, which is what the trial court did in this instance.

¶ 31    Respondent additionally argues that the expiration of the 15-year term of the life insurance policy on July 27, 2018, constituted a substantial change in circumstances which opened up the prior order to modification. Respondent points out that the trial court specifically stated that based on the change in circumstances of the insurance policy expiring, it was comfortable setting the security amount on what was owed between that date and the end of the employment contract in December 2019, after subtracting $50,000 for an insurance policy that respondent currently had through his employer.

¶ 32    Last, respondent argues that he cannot be held in indirect civil contempt for violating the terms of the February 9, 2018, order, because that order is void or voidable due to the trial court exceeding its statutory authority in requiring substitute security for maintenance upon the expiration of the existing life insurance policy. Respondent cites section 504(f) of the Marriage Act (750 ILCS 5/504(f) (West 2018)). Section 504(f)(1) (750 ILCS 5/504(f)(1) (West 2018)) states that a trial court may order that maintenance be secured by an existing life insurance policy. Section 504(f)(2) (750 ILCS 5/504(f)(2) (West 2018)) states that if the trial court determines that maintenance should be secured by a new life insurance policy on the payor's life, the trial court may order only that the payor cooperate on the steps for the payee to obtain the policy, at the payee's sole option and expense.

¶ 33     Petitioner replies that there was no evidence submitted to the court that respondent paid premiums on the life insurance policy, or that it expired on June 27, 2018. She asserts that even if it had expired, the February 9, 2018, order provided that if the insurance policy expired, respondent was to provide substitute security of $300,000. Petitioner argues that the issue on appeal is whether the trial court erred in modifying the amount of security for her maintenance without a showing of a substantial change in circumstances. She argues that her agreement in the October 17, 2018, order was only that before hearing the petition for indirect civil contempt, the parties would attempt to agree on what the substitute security would be, and if they were not able to, the issue would also be addressed by the trial court.  According to petitioner, she never agreed to a reduction or that the trial court would address the issue of modification in the amount of substitute security. She also contends that respondent cannot argue that the trial court's February 9, 2018, order is void or voidable, as he did not file a cross-appeal, and she asks that we strike this argument.

¶ 34     We agree with petitioner that the trial court erred in modifying the amount of the substitute security absent a motion to modify. Whether the trial court followed the proper procedure based on the pleadings before it is a question of law that we review *de novo*. See *Atkins v. Robbins, Salomon & Patt, Ltd.*, 2018 IL App (1st) 161961, ¶ 57 (we review questions of law *de novo*). "The court's authority to exercise its jurisdiction and resolve a justiciable question is invoked through the filing of a complaint or petition, pleadings that function to frame the issues for the trial court and circumscribe the relief the court is empowered to order." *Suriano v. Lafeber*, 385 Ill. App. 3d 490, 492 (2008). Therefore, a trial court may not afford a party relief, despite the presence of evidence supporting such relief, without a corresponding pleading. *Cushing v. Willis*, 2018 IL App (5th) 170444, ¶ 19; see also *In re Estate of Bontkowski*, 337 Ill. App. 3d 72, 77 (2003) ("The issues in any litigation are determined by the pleadings and an issue cannot be sustained by evidence

absent a corresponding pleading.").

¶ 35     In this case, the February 9, 2018, order required respondent to maintain his existing life insurance, naming petitioner as beneficiary, in an amount not less than $300,000. It stated that if the coverage expired due to respondent's age, he was to provide substitute security for maintenance of $300,000 that was satisfactory to petitioner, for as long as he had an obligation to pay maintenance. Petitioner thereafter filed petition for rule to show cause why respondent should not be held in indirect civil contempt for failing to provide proof that he had a life insurance policy naming her as the beneficiary. The October 17, 2018, agreed order further raised the issue of an adequate substitute security. Thus, the only issues before the trial court on November 1, 2018, were the rule to show cause and the question of an adequate substitute security. There was no motion to modify the amount of the security required in the February 9, 2018, order, nor was there a motion requesting that the amount of security decrease monthly. Therefore, the trial court lacked authority to order such relief, as only the petition for rule to show cause was before the court. See also 750 ILCS 5/510(a) (West 2018) (any judgment regarding maintenance or support may be modified only for installments accruing after notice by the moving party of the filing of a motion for modification).

¶ 36     Respondent's argument of invited error is inapplicable for this issue. Although petitioner agreed to the trial court addressing the issue of adequate substitute security, she never stipulated to the trial court changing the amount of the substitute security required in the February 9, 2018, order, nor did she stipulate to amount of the security decreasing over time. Respondent clearly argued for such relief during the November 1, 2018, hearing, but he should have first filed a motion to bring these issues before the trial court.

¶ 37   That being said, we do believe that the doctrine of invited error applies to petitioner's argument that she was denied due process in not having a formal hearing on her petition for rule to show cause. Under the doctrine of invited error, a party cannot complain of error which the party induced the court to make, or to which the party consented. *Ely v. Pivar*, 2018 IL App (1st) 170626, ¶ 43. Here, at the November 1, 2018, hearing, respondent's attorney suggested to the trial court that the parties could probably stipulate to the facts, and that if petitioner's attorney disagreed on anything, they could "have a hearing on those points." Petitioner's attorney did not object to this suggestion at this point or at any time during the hearing. In fact, respondent's attorney later asked petitioner's attorney if anything that he said was incorrect. Instead of asserting the right to call witnesses and present evidence, petitioner's attorney argued that the amount of substitute security should total $300,000. Without a clear objection to the manner in which the hearing proceeded, any error by the trial court would constitute invited error, and petitioner cannot now complain that she was deprived of her right to due process. As such, we have no basis to disturb the trial court's ruling that respondent was not in contempt of the December 19, 2017, dissolution judgment and the February 9, 2018, order. We therefore need not address respondent's argument that he cannot be held in contempt for violating the February 9, 2018, order because it was void or voidable, nor do we need to entertain petitioner's request that we strike that argument. Based on our resolution, we also need not address petitioner's argument that the trial court erred in denying her motion to reconsider.

¶ 38                                    III. CONCLUSION

¶ 39   For the reasons stated, we affirm the judgment of the Kane County circuit court insofar as it found respondent not in contempt. However, we reverse the portion of the judgment regarding

the terms of the substitute security, and we remand for further proceedings consistent with this order.

¶ 40    Affirmed in part and reversed in part; cause remanded.