2022 IL App (2d) 210593-U
No. 2-21-0593
Order filed August 26, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| *In re* MARRIAGE OF JOANN O'HARA, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellant, | ) ) | |
| and | ) | No. 16-D-667 |
| DAVID O'HARA, | ) ) | Honorable Charles E. Petersen, |
| Defendant-Appellee. | ) | Judge, Presiding. |

PRESIDING JUSTICE BRIDGES delivered the judgment of the court.
Justices McLaren and Hutchinson concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court's finding of a substantial change in circumstances was not against the manifest weight of the evidence, but it abused its discretion in terminating maintenance retroactive to the time when the respondent was still earning a significant salary. We therefore affirm in part, reverse in part, and remand the cause.

¶ 2    Petitioner, Joann O'Hara, and respondent, David O'Hara, were married on August 27, 1977, and their marriage was dissolved on December 19, 2017. The dissolution judgment, as amended, provided for "permanent maintenance" for Joann of $9350 per month. The trial court subsequently granted David's petition to terminate maintenance based on his retirement and Joann's increased assets. Joann appeals, arguing that (1) the trial court failed to follow the statutory

requirement that David show a substantial change in circumstances, and (2) the trial court's ruling was an abuse of discretion. We affirm in part, reverse in part, and remand the cause.

¶ 3                                                  I. BACKGROUND

¶ 4      Judge Rene Cruz was the original trial judge in this case. Regarding maintenance, the December 19, 2017, dissolution judgment stated in relevant part:

> "In this case the court has evaluated all of the factors and finds that to allow JOANN to meet her on-going living expenses, maintenance is appropriate in the herein matter. JOANN has established, by uncontroverted testimony that she has had numerous surgeries to knees and shoulder. JOANN is currently 67 years of age and receiving social security in the amount of $1,332.00 monthly, as well as a pension from Continental Airlines in the amount of $91.00 monthly (for a total of $1,414.00 gross monthly or $16,968.00 annually). DAVID is currently 67 years of age [and] earns $27,834.00 base monthly through his employment with Horton Insurance Company, $2,483.00 monthly for travel and expense, $1,850.00 monthly for phone and car, $953.00 monthly in interest and dividend income and $631.00 monthly for rental income (for a total of $33,751.00 gross monthly or $405,012.00).
>
> The disparity of income between the parties makes this an appropriate case for maintenance. The parties were married on August 27, 1977[,] and this case was filed on June 3, 2016, giving a length of marriage of 38-plus years, making this a *permanent maintenance case*." (Emphasis added.).

¶ 5      Per the amended dissolution judgment, David was also to have $300,000 in life insurance to secure the maintenance. Joann received 60% of the marital estate and certain other assets, for a

total of $2,418,355.92 in assets. David received 40% of the marital estate and certain other assets, including over $900,000 in non-marital assets, for a total of about $3.4 million in assets.[1]

¶ 6    Litigation involving the life insurance requirement and corresponding attorney fees resulted in two prior appeals that are not directly at issue here. See *In re Marriage of O'Hara*, 2021 IL App (2d) 200648-U; *In re Marriage of O'Hara*, 2020 IL App (2d) 190083-U.

¶ 7    On November 13, 2019, David filed a petition to modify or terminate maintenance, alleging as follows. His employment contract with The Horton Group (Horton) was set to expire on December 31, 2019, and he had notified Horton of his probable intent to retire at that time. He also had discussed remaining employed for an additional 18 months beyond the contract, though it would be at a substantially reduced income. Joann had received 60% of the estate "and accordingly had substantially more in asset value" than he did. David argued that his retirement would warrant termination of maintenance because he would be over 70 years old and Joann had sufficient assets, coupled with Social Security income and pension benefits, to live the lifestyle enjoyed by the parties during their marriage. He further argued that his change in employment status, whether retirement or continuing to work at a significantly lower income, constituted a substantial change in circumstances warranting a modification or termination of maintenance beginning January 1, 2020.

¶ 8    David filed a supplemental petition to modify maintenance on April 22, 2020, asking that the trial court also terminate the requirement to maintain life insurance as security for his maintenance obligation.

---

[1]David testified to the $3.4 million figure at the hearing relevant to the instant appeal. Joann states in her brief that David's assets totaled $3,141,342.07 at the time of the dissolution.

¶ 9    A hearing on David's petition took place before Judge Charles Petersen on June 28, 2021. Thomas McCartney, Joann's financial planner, provided the following testimony. Joann had been his client since January 2018, and in December 2019, she advised him that she wanted to make a financial plan in the event that her maintenance was terminated. Their goal was to generate $108,000 pretax in distributions as income so her lifestyle could be maintained. Joann had financial accounts totaling $2,567,212 as of May 27, 2021. At McCartney's advice, Joann purchased an annuity for about $700,000 that would generate an annual income of 5.75%, with a minimum of about $41,000, for the rest of her life. The distributions for the annuity began in January 2020. Because it was a variable annuity, there was no guarantee of what, if any, amount would be left in the annuity upon Joann's death. Joann had inherited two IRAs from a friend worth $143,846 and $32,998, of which she was taking required minimum distributions of $8,755 and $1,817 annually. Joann had an account with a value of $112,726.31 and an IRA with a value of $1,500,475, the latter of which she took distributions of $61,200 annually. For the previous 18 months, her IRA had grown in value despite the distributions. McCartney used a life expectancy of 95 years when making financial plans for clients, and he felt the distributions they were using for Joann were sustainable. They discussed Joann possibly selling her Florida property at some point due to her finances. McCartney was not aware of any maintenance payments to Joann after January 2020.

¶ 10    We next summarize Joann's testimony. At the time the dissolution judgment was entered, Joann was 67 years old and David was close to 68 years old. Joann had worked at Continental Airlines for 12 years but stopped in 1980 when the parties' first child was born. She had been the primary caretaker for their two daughters. The parties had owned a home in Elgin and a home in Florida and took vacations together. They also had memberships in two country clubs and used to

go out socially every Friday and Saturday. David would take several golf trips during the year as well.

¶ 11    Joann currently had a home in Elgin worth $323,980 and a home in Florida worth $265,000. She received Social Security of $17,203 annually. In addition to the IRAs that she inherited from a friend, Joann inherited about $100,000 from her mother in 2019, which she gave to McCartney to invest. Joann no longer had a country club membership because she could not afford it, though she was still able to go to the Elgin country club as a guest of friends. Joann's health was "fair." She had a shoulder rotator cuff injury, a melanoma, stenosis in her neck, a left shoulder injury, and knee injections. Joann believed that she had a net worth of over $3 million.[2] Since the dissolution judgment, her net worth had gone up $700,000 and she had accumulated $100,000 in her bank account, as compared to less than $30,000 in the bank account before January 2020.

¶ 12    Joann met with McCartney after receiving David's petition to terminate maintenance because she was worried about her finances if the petition was granted. David had been paying $9350 monthly maintenance but reduced it to $5400 monthly in January 2020. The decrease resulted in Joann not undertaking all of the home repairs needed, such as replacing windows, siding, and the patio on her Elgin home, and other repairs for the Florida home. Before David filed his petition, she had not made any withdrawals from her retirement accounts. Joann did not tell McCartney that David was still paying maintenance after January 2020.

¶ 13    David provided the following testimony. While the divorce was pending, he sold his group benefits business, Fringe Funding, in January 2017 to Horton. Part of the sale terms included a three-year employment contract with Horton for $386,000 per year, including expenses, from 2017

---

[2]Joann's exhibit showed a net worth of $3,275,901.66.

to 2019. He then entered a second contract with Horton from January 2020 to June 2021 for a base salary of $262,000 plus $500 per month for expenses. In January 2020, he reduced his monthly maintenance payments to $5400 at his attorney's advice, after a pre-trial conference. In February 2020, he received $400,000 from Horton as a "tail end payment" for the sale of Fringe Funding. Per the dissolution judgment, Joann was not entitled to any portion of that money. David's employment with Horton was set to terminate the day after the current hearing. David still planned to work with two clients as an independent contractor to aid in the transition, earning about $4000 per month for an undetermined time. He would have to pay Medicare and Social Security taxes on that income at the rate of 15.3%, along with regular income tax.

¶ 14    David was 71 years old. He lived in Elgin at the former marital residence, which was worth about $600,000 to $625,000. He purchased a home in Florida after the divorce that had a value of about $400,000. It was in the same development as Joann's unit, which he believed was worth $350,000. David had orthopedic issues including a partially torn labrum, bicep tendons torn on a shoulder, total knee replacement, and a snapped anterior tibial tendon on his foot. He played golf three to four times a week. David belonged to two country clubs for which he paid a total of about $53,000 annually. He spent an additional $1200 monthly on entertainment expenses. David lived with a significant other who contributed about $2200 per month for their joint expenses. He began receiving Social Security of $41,642.70 annually in 2020. David's assets had increased around $1.5 million since the time of the divorce, and his current assets were worth approximately $4.8 or $4.9 million.

¶ 15    The trial court entered its written order on September 8, 2021. It stated that "[t]he question in this case is what is the baseline for sufficient assets such that maintenance may be terminated?" It discussed the testimony from the hearing and the parties' arguments, at one point stating "The

total reduction in [David's salary] was $120,000 per year supporting a maintenance reduction. Per the statute the question before the court is whether [Joann] has need for maintenance to support her lifestyle." It then stated:

"I find this maintenance terminable. I have not heard convincing evidence that if the maintenance were to terminate that the wife would not have sufficient assets so as to negatively [affect] her lifestyle. Her net worth is about $3,300,000, a substantial increase from the $2,670,000[3] she received at the divorce.

Despite the disparity in their net worth, I heard no evidence that she would go without. I find that she has sufficient assets and income from those assets to draw upon such [that] there is no need for maintenance. In fact her financial advisor prudentially has begun changing her investments.

I order that the maintenance is terminated retroactively to the date of filing of the petition to terminate. Based on this ruling the requirement for life insurance is cancelled."

¶ 16    This timely appeal followed.

¶ 17                            II. ANALYSIS

¶ 18                    A. Substantial Change in Circumstances

¶ 19    Joann first argues that the trial court erred as a matter of law by failing to apply section 510(a-5) of the Illinois Marriage and Dissolution of Marriage Act (Marriage Act) (750 ILCS 5/510(a-5) (West 2020)). That statute stated, as relevant here, that "[a]n order for maintenance may

---

[3]Joann actually received $2,418,355.92 at the time of the divorce.

be modified or terminated only upon a showing of a substantial change in circumstances."[4] *Id.* Joann asserts that since the entry of the dissolution judgment, neither her needs nor David's ability to pay maintenance have changed. Joann cites *In re Marriage of Bernay*, 2017 IL App (2d) 1605983, ¶ 18, where this court stated, "It is axiomatic that, to warrant termination, the 'change' must not have been contemplated when permanent maintenance was ordered." Joann argues that because David was 67 years old at the time the dissolution judgment was entered, his retirement was contemplated by the trial court when it ordered permanent maintenance, and therefore his retirement does not constitute a substantial change in circumstances, especially considering that David was employed for a further 18 months after filing his petition and was still employed at the time of the hearing. Joann also cites *In re Marriage of Verhines & Hickey*, 2018 IL App (2d) 171034, ¶ 87, where this court stated that reduced income in retirement does not automatically

---

[4]The statute was subsequently amended to add: "Contemplation or foreseeability of future events shall not be considered as a factor or used as a defense in determining whether a substantial change in circumstances is shown, unless the future event is expressly specified in the court's order or the agreement of the parties incorporated into a court order. The parties may expressly specify in the agreement incorporated into a court order or the court may expressly specify in the order that the occurrence of a specific future event is contemplated and will not constitute a substantial change in circumstances to warrant modification of the order." See Public Act 102-823 (eff. May 13, 2022) (amending 750 ILCS 5/510(a-5) (West 2020)). The new version of the statute is not applicable in the instant case, though the changes involve a subject at issue here.

create a substantial change in circumstances but rather is one factor to consider in determining whether there has been a substantial change.

¶ 20    Joann argues that although her accounts increased by about $764,000, $100,000 of this was from an inheritance from her mother in 2019 and inherited IRA accounts of $143,000 and $33,000 from a friend. She argues that in reality her investment accounts have increased about $488,000 whereas David's investment accounts have increased about $2,288,256.31 (excluding his homes, cars, and bank accounts), which shows that he can continue to pay maintenance. Joann maintains that although David's income was reduced in 2020 and 2021, he was still earning a comparable income as at the time of the divorce as he continued to earn in excess of a $240,000 salary, was collecting over $40,000 in Social Security, and was collecting over $26,000 in contributions to household expenses from his significant other. Joann argues that despite this income, David reduced his payments to her beginning in January 2020 to $5400. Joann also points to David's testimony that he would possibly continue working as an independent contractor after his retirement. Joann further argues that in addition to his assets and wealth, David's lifestyle shows that he is able to pay maintenance, as he pays $53,000 annually for two country clubs and has additional monthly entertainment expenses of $1200.

¶ 21    Joann further analogizes this case to *In re Marriage of Folley*, 2021 IL App (3d) 180427, and *In re Marriage of Bernay*, 2017 IL App (2d) 160583. In *Folley*, the parties equally divided their marital estate worth about $5 million, and the wife received about $20,000 per month in unallocated maintenance and child support. *In re Marriage of Folley*, 2021 IL App (3d) 180427, ¶ 5. The husband was subsequently forced to retire from his position at age 58, at a time where he had about $12 million in assets, and he additionally received pension payments. *Id.* ¶¶ 7-9, 19. The wife was 56 years old and had assets of $7.5 million. *Id.* ¶ 15. She testified that if the

maintenance were terminated, she would have to spend her savings or sell stock. *Id.* ¶ 16. The trial court found that the husband's forced retirement was a substantial change in circumstances that warranted a change in maintenance, but not until after his severance pay was complete. *Id.* ¶ 18. At that time, at which point the husband had not found new employment, the trial court temporarily abated maintenance payments completely. *Id.* ¶ 27. The appellate court reversed, stating that "despite [the husband's] forced early retirement and substantial decrease of income, it is clear from the record that [the husband] had the present ability to continue to pay maintenance in some amount and, arguably, the ability to meet his full maintenance obligation of $20,000 per month as agreed to by the parties under their MSA." *Id.* ¶ 44. It stated that the trial court abused its discretion because "no reasonable person would have determined that [the husband] had an inability to pay at least some portion of the permanent maintenance award the parties had agreed to under their MSA." *Id.* Joann argues that like the wife in *Folley*, she is having to take distributions from investments and retirements accounts, and that David should be expected to use similar distributions and assets to pay her permanent maintenance.

¶ 22    In *In re Marriage of Bernay*, 2017 IL App (2d) 160583, ¶ 9, the trial court awarded the wife permanent maintenance. Many years later, the trial court granted the husband's petition to terminate maintenance based on a substantial change in circumstances from his decreased salary, his impending retirement, and his health issues. *Id.* ¶ 12. This court reversed, stating that the husband's retirement was clearly contemplated when the trial court had previously awarded permanent maintenance, such that it was not a substantial change in circumstances, and that the evidence showed that the husband had sufficient assets to continue to satisfy the maintenance obligation. *Id.* ¶ 19. Joann argues that she and David were already past retirement age when the trial court ordered permanent maintenance, so his retirement cannot constitute a substantial change

in circumstances. Joann asserts that Judge Petersen gave no deference to Judge Cruz's prior decisions in the matter, particularly that of the award of permanent maintenance.

¶ 23    Joann contends that David failed to present evidence that a substantial change in circumstances occurred warranting the termination or modification of her maintenance award, and the corresponding obligation for life insurance to secure the maintenance. She asserts that the trial court provided no analysis in its ruling stating that due to a substantial change in circumstances, David does not have sufficient resources to pay his maintenance obligation or that Joann's needs have substantially changed. She therefore argues that the trial court's ruling is fundamentally defective and should be reversed.

¶ 24    David argues that, contrary to Joann's argument, the trial court did not base its decision solely on her ability to meet her reasonable needs based on the lifestyle she enjoyed during the marriage. David highlights that the trial court commented on all of the evidence before making its ruling. He cites *Blum v. Koster*, 235 Ill. 2d 21 (2009), where our supreme court quoted *In re Marriage of Connors*, 303 Ill. App. 3d 219 (1999), with approval for the proposition that:

> "Although a trial court should make specific findings or otherwise make clear from the record the relevant factors it considered in rendering a decision under the Marriage Act, such findings are not mandatory. [Citation.] Reviewing courts have consistently held that, where the record is adequate to provide a basis upon which to review the propriety of the decision and the decision is supported by the evidence, the reviewing court will not reverse solely because specific findings are lacking." *Blum*, 235 Ill. 2d at 37-38 (quoting *In re Marriage of Connors*, 303 Ill. App. 3d at 230).

David notes that his petition sought modification or termination of maintenance based on two changes in circumstances, being a substantial decrease in income impacting his ability to pay and

an improvement in Joann's financial circumstances alleviating her need for continued maintenance.

¶ 25    David argues that there is considerable evidence in the record to support a determination that a substantial change in circumstances occurred relative to both his significant decrease in income and Joann's substantial increase in net worth. Regarding his income, he notes that from January 1, 2017, to December 31, 2019, his salary with expenses was $386,000 per year, which decreased to a total of $268,000 per year from January 1, 2020, to June 30, 2021. His employment was terminating the day after the hearing and he was considering staying on as an independent contractor to service particular clients, with anticipated earnings of about $4000 per month. David cites *In re Marriage of Osseck*, 2021 IL App (2d) 200268, ¶¶ 51-52, where the appellate court affirmed the trial court's finding of a substantial change in circumstances when the husband's income decreased from $811,000 to $688,000, and there was a significant possibility that it would further decrease to between $400,000 and $600,000.

¶ 26    On the subject of assets, David argues that his net worth was about $4.8 or $4.9 million at the time of the hearing, which was about a $1.5 million increase from the time of the divorce, and that Joann's net worth increased from $2,418,355.92 to $3,275,901.66, which was an increase of 35.5%. David notes that from January 1, 2020, through May 2021, the overall value of Joann's accounts had increased even with monies being withdrawn monthly per Joann's financial planning with McCartney. David argues that Joann is able to obtain $108,000 per year from her annuity and IRAs without any substantial risk to her assets.

¶ 27    David additionally argues that although Judge Cruz had used the term "permanent maintenance," the record reflects that the judge acknowledged that maintenance would likely be subject to modification upon David's retirement. David points out that Judge Cruz reduced the life

insurance requirement from $1 million in the original dissolution judgment to $300,000 after its posttrial changes, which David asserts was based in part on David's argument that he had only another 20 months of maintenance to pay. David also highlights that Judge Cruz later reduced the requirement to $200,000, with the security for maintenance to decrease through the end of his employment agreement, though we subsequently reversed the trial court's ruling on the basis that David had not filed a pleading seeking modification of the life insurance provision. *In re Marriage of O'Hara*, 2020 IL App (2d) 190083-U. David further notes that in the instant proceedings, Judge Cruz denied Joann's motion for summary judgment on David's petition, in which she argued that she was awarded permanent maintenance at a time when David was 67 years old and it was contemplated that he would be retiring in the near future. Judge Cruz stated that retirement alone may not support a substantial change in circumstances, but it was a factual determination to be made taking into account various factors for each case. David relatedly cites *Bartlett v. Quinn*, 2022 IL App (1st) 201358-U, ¶ 30, as persuasive authority, in which the court stated that the Marriage Act allows for instances where a substantial change in circumstances necessitates modification, and that "the absence of retirement as a terminating event in the original dissolution order does not preclude retirement from being considered a substantial change in circumstances."

¶ 28    David cites *In re Marriage of Wojcik*, 2018 IL App (1st) 170625, ¶ 30, for the proposition that an order to pay permanent maintenance means an obligation to pay for an indefinite period, as opposed to an everlasting obligation. David argues that the aforementioned rulings by Judge Cruz indicate that Judge Cruz did not intend the term "permanent maintenance" to preclude modification upon David's retirement. David maintains that Joann's reliance on *Folley* to support the position that retirement is not a substantial change is not persuasive, as the appellate court affirmed the finding of a substantial change and reversed the trial court's decision to abate

maintenance entirely. *In re Marriage of Folley*, 2021 IL App (3d) 180427, ¶ 44. David also notes that the husband in *Folley* was only 58 years old and had $12 million in assets.

¶ 29    Maintenance may be modified or terminated " 'only upon a showing of a substantial change in circumstances.' " *Id.* ¶ 35 (citing 750 ILCS 5/510(a-5) (West 2016)). In arguing that the trial court failed to apply section 510(a-5) by not requiring David to show a substantial change in circumstances, Joann is arguing that the trial court failed to follow statutory requirements, which presents a question of law that we review *de novo*. *In re Vicente G.*, 408 Ill. App. 3d 678 (2011).

¶ 30    We disagree that the trial court failed to apply section 510(a-5). Notably, the trial court summarized in detail the parties' arguments and the evidence, including that Joann argued that David had "not met his burden of proof that there [was] a change in circumstances to warrant a reduction in maintenance, nor to warrant a termination of the life insurance policy securing the maintenance" and argued that he had "not met his burden of proof showing a substantial change in circumstances." The trial court also stated that David argued that "one does not have to prove that he/she cannot pay maintenance. The standard is a substantial change in circumstances which would impact a person's ability to pay the maintenance." The trial court further noted David's argument that his decrease in income "constitute[d] a substantial change in circumstances which would affect his ability to pay the $108,000 maintenance." It found that the "total reduction in [David's salary] was $120,000 per year supporting a maintenance reduction," based on his salary in 2020 decreasing from $334,000 annually to $262,000, and a corresponding reduction in allowances from $52,000 to $6000 per year.[5]

¶ 31    Therefore, the trial court recognized that section 510(a-5) requires a showing of a substantial change in circumstances. Though the trial court did not restate this requirement in its

---

[5]The decrease actually totals $118,000 rather than $120,000.

own findings of the case, it was not required to make specific findings. *Blum*, 235 Ill. 2d at 37-38. Rather, looking at the trial court's order as a whole shows that it found that David had sufficiently proven a substantial change in circumstances had occurred based on David's decreased income and on Joann's decreased need for maintenance due to increased assets, with a focus on the latter.

¶ 32   We next look at whether the trial court's finding of a substantial change in circumstances was erroneous. A substantial change in circumstances occurs when either the receiving spouse's needs have changed or the payor's ability to pay the maintenance has changed. *In re Marriage of Osseck*, 2021 IL App (2d) 200268, ¶ 47. The party seeking the modification has the burden of establishing that a substantial change has taken place, by a preponderance of the evidence. *Id.* ¶¶ 47, 54. A trial court's finding that a substantial change in circumstances has occurred is reviewed under the manifest weight of the evidence standard. See *In re Marriage of Sorokin*, 2017 IL App (2d) 160885, ¶ 24 (applying the standard in a child support case). A finding is against the manifest weight of the evidence where the opposite conclusion is clearly apparent or the finding is unreasonable, arbitrary, or not based on the evidence. *In re Marriage of Vickers*, 2022 IL App (5th) 200164, ¶ 45.

¶ 33   Retirement alone does not automatically constitute a substantial change in circumstances; rather, it depends on the facts of each case. *In re Marriage of Folley*, 2021 IL App (3d) 180427, ¶ 38. The court should consider the payor spouse's age, health, motives, timing of the retirement, ability to pay maintenance after retirement, and the ability of the party receiving maintenance to provide for themselves. *Id.* "Where a payor spouse has sufficient assets to continue to meet his or her maintenance obligation after retirement, a reduction in income does not, in and of itself, constitute a substantial change in circumstances to support a termination or reduction of maintenance." *Id.*

¶ 34    We conclude that the trial court's finding that a substantial change in circumstances had occurred was not against the manifest weight of the evidence. On January 1, 2020, David's salary decreased by about $118,000, from about $386,000 to $268,000, inclusive of expense allowances. The contract for the latter salary ended on June 30, 2021, at which point David anticipated that he may continue working as an independent contractor for about $4000 per month, exclusive of additional taxes, to help certain clients. Even if that employment lasted a year, it would be another $220,000 decrease in annual income, which is quite significant. There is no evidence that David's retirement from Horton was done in bad faith. To the contrary, it occurred at the end of his employment contract with Horton, at a time when David was 71 years old, years past the age when most people retire. David's assets were substantial in that they were worth about $4.8 or $4.9 million, including an increase of about $1.5 million since the time of the divorce, but Joann also had significant assets of $3,275,901.66, and her net worth had gone up by over $700,000 since the divorce.

¶ 35    Joann argues that her maintenance cannot be altered because she was awarded permanent maintenance and David's retirement was contemplated at the time the dissolution judgment was entered given that the parties were already in their late 60s. However, as David points out, "permanent" maintenance simply means an obligation to maintenance for an indefinite period (*In re Marriage of Wojcik*, 2018 IL App (1st) 170625, ¶ 30), and permanent maintenance is modifiable upon the showing of a substantial change in circumstances (*In re Marriage of Bernay*, 2017 IL App (2d) 160583, ¶ 14). Moreover, as David also highlights, the record shows that Judge Cruz, who originally ordered the maintenance to be permanent, recognized that it could be modified upon David's retirement, particularly in his comments denying Joann's motion for summary

judgment on David's petition. Accordingly, we believe that there is no basis to reverse the trial court's finding of a substantial change of circumstances.

¶ 36                                B. Termination of Maintenance

¶ 37    Joann argues that even if the trial court determined that there was a substantial change in circumstances, the trial court abused its discretion in terminating maintenance and making the termination retroactive to November 19, 2019, when David filed his petition. Joann argues that the trial court failed to consider relevant statutory factors, particularly those pertaining to income and assets. Joann further argues that David presented no evidence that he was unable to pay maintenance, and she points to testimony regarding his income, assets, and lifestyle. Regarding David's position that she has sufficient assets to produce income to allow her to enjoy the same lifestyle as during the marriage, she contends that she is taking distributions that are not guaranteed due to market risk, all while living below her prior lifestyle with $108,000 per year. She argues that her investments have not significantly changed in value, that her purchase of the $700,000 annuity came from assets she received at the time of the dissolution, and that the distributions from her retirement accounts do not count as income for determining maintenance (see *In re Marriage of Verdi*, 2014 IL App (3d) 130561, ¶ 32). Joann points to testimony that she no longer belongs to any country clubs, had discussed the possibility of selling the Florida house for financial reasons, and was delaying repairs to both residences. She maintains that she should not be required to exhaust her assets to meet her basic needs. See *In re Marriage of Kuper*, 2019 IL App (3d) 180094, ¶ 19 ("A former spouse is not required to exhaust all of her assets in order to meet her basic needs."). Joann asserts that she will be required to draw on her assets to meet her needs "until she is left in a state of relative destitution at the end of her life." Joann argues that, in contrast, David has about twice the assets that she does, was continuing to work and earn income, and was enjoying

the same standard of living as before his retirement, including membership in two country clubs. She also argues that David lives in the marital home worth $600,000 to $625,000 as compared to her $324,000 home in Elgin.

¶ 38    Joann further argues that the trial court abused its discretion in making the termination of maintenance retroactive to David's petition filed on November 13, 2019, which had the effect of her receiving less than two years of her "permanent" maintenance, and which was 19 months before David's anticipated retirement. She asserts that the trial court terminated maintenance while David was still receiving over $300,000 in income annually, with David himself not requesting such retroactivity. She notes that David continued to work full time for an additional 18 months after he filed his petition and was still working as of the hearing date. Joann also makes many of the arguments discussed in conjunction with the issue of a substantial change in circumstances.

¶ 39    David argues that once the trial court found that a substantial change in circumstances had occurred, it was free to exercise its discretion to continue, modify, or terminate maintenance, or change the maintenance payment terms, after considering the factors in sections 504 and 510(a-5). See *Blum*, 235 Ill. 2d at 36. David argues that for the section 504 factors, the trial court specifically commented on each party's income and assets, financial obligations as a result of the marriage dissolution, each party's needs, the standard of living established during the marriage, David's change in employment status and whether that was made in good faith, the duration of maintenance previously paid, the property awarded to each party, and the increase in value of that property since the dissolution. David cites *In re Marriage of Waldschmidt*, 241 Ill. App. 3d 7, 13 (1993), where the court stated that "[m]aintenance should be terminated, even after a long-term marriage, when the spouse receiving the maintenance has become virtually self-sufficient."

¶ 40    David contends that the basic facts in this case are not in dispute, as both parties own residences in Elgin and in the same city in Florida, both have between $600,000 to $800,000 equity in their real estate, and David has about $4.2 million in invested assets while Joan has about $2.7 million. David argues that this is a case of two retired people who have reached the age at which they are expected to draw on their retirement savings to pay their living expenses. According to David, they are both in a position to live the lifestyle they enjoyed during the marriage without significant risk to their future financial security. David maintains that during the 18 months his petition was pending, Joann saved almost all of the maintenance that she received from him, and the value of her invested assets continued to increase despite taking distributions of $9000 per month. David argues that to obligate him "to continue to pay maintenance under these circumstances would constitute nothing more than a wealth transfer from David to Joann."

¶ 41    If the trial court determines that the moving party has met its burden of showing a substantial change in circumstances, it should consider whether a modification of maintenance is warranted under the factors listed in sections 510(a-5) and 504(a) of the Marriage Act. 750 ILCS 5/510(a-5) (West 2020); *In re Marriage of Folley*, 2021 IL App (3d) 180427, ¶ 35.

¶ 42    Section 510(a-5) lists nine statutory factors: (1) any change in the employment status of either party, and whether it has been made in good faith; (2) any efforts of the party receiving maintenance to become self-supporting; (3) any impairment of earning capacity of either party; (4) the tax consequences of the maintenance payments; (5) the duration of previous maintenance payments relative to the marriage's length; (6) the property, including retirement benefits, awarded to each party in the dissolution; (7) the increase or decrease in each party's income; (8) property acquired after the dissolution; and (9) any other factor the trial court expressly finds to be just and equitable. 750 ILCS 5/510(a-5) (West 2020).

¶ 43    Section 504(a) lists the following factors: the parties' incomes and property, and financial obligations resulting from the marriage dissolution; the parties' needs; the parties' present and future earning capacities; any impairment in earning capacity for the party seeking maintenance due to devoting time to domestic duties or delaying or foregoing education or career opportunities due to the marriage; any impairment of the realistic present or future earning capacity of the party against whom maintenance is sought; the time the party seeking maintenance needs to obtain appropriate education or employment, and whether that party is able to support himself or herself through employment; the effect of parental responsibility arrangements, including on a party's ability to seek or maintain employment; the standard of living established during the marriage; the marriage's duration; the parties' ages, physical conditions, skills, assets, and liabilities; the parties' sources of income; all sources of public and private income; the tax consequences to each party; the contributions and services the party seeking maintenance made to the education or career of the other spouse; any valid agreement of the parties; and any other factor the court expressly finds to be just and equitable. 750 ILCS 5/504(a) (West 2020).

¶ 44    We review a trial court's decision to modify maintenance for an abuse of discretion. *In re Marriage of Osseck*, 2021 IL App (2d) 200268, ¶ 49. An abuse of discretion takes place where the trial court's decision is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court. *Id.*

¶ 45    We conclude that the trial court abused its discretion in completely terminating maintenance beginning on November 19, 2019, when David filed his petition and was still employed. The parties' respective incomes were an important consideration in the original maintenance award, as the dissolution judgment states that "[t]he disparity of income between the parties makes this an appropriate case for maintenance." On the date David filed his petition, he

was still earning his salary at a rate of $386,000 annually. His salary decreased on January 1, 2020, but even then it was still $268,000, including expenses, until June 30, 2021. At that point, David was planning to continue working, albeit earning very reduced independent contractor wages of about $4000 per month.

¶ 46 David's citation to *In re Marriage of Waldschmidt*, 241 Ill. App. 3d at 13, for the proposition that maintenance should be terminated when receiving spouse has become virtually self-sufficient, is not persuasive, as there the recipient spouse had substantially more income and assets than the payor spouse. Further, a maintenance award is supposed to provide the recipient with the same standard of living enjoyed during the marriage. *In re Marriage of Watson & Cox*, 2022 IL App (2d) 210137, ¶ 35.

¶ 47 The trial court largely focused on Joann's financial independence, stating that it had "not heard convincing evidence that if the maintenance were to terminate that [Joann] would not have sufficient assets so as to negatively [affect] her lifestyle." However, David lived in the marital home worth about $600,000 to $625,000 whereas Joann testified that her home was worth about $323,980. David belonged to two country clubs, as the parties did when they were married, at a cost of $53,000 annually, whereas Joann no longer belonged to any country clubs. These are the most obvious examples showing that Joann is not maintaining the same standard of living as the parties enjoyed during their marriage. With the help of her financial advisor, Joann is receiving about $108,000 per year through her new annuity and distributions from her assets, which amount is lower than what would be needed to sustain her prior lifestyle.

¶ 48 Accordingly, we reverse the trial court's ruling terminating maintenance retroactive to November 19, 2019. Maintenance should continue at its original rate until January 1, 2020, when

David's salary decreased.[6] Having affirmed the trial court's finding that there was a substantial change in circumstances, the trial court should consider whether a decrease of maintenance is warranted after considering the factors listed in section 510(a-5) and 504(a) of the Marriage Act, for the period of January 1, 2020, to June 30, 2021, when David was earning about $268,000 annually, or whether the maintenance should remain at $9350 per month. The trial court should then consider whether a termination or decrease in maintenance is appropriate beginning July 1, 2021, again after considering the statutory factors. Lastly, our review also requires the trial court to revisit the issue of life insurance as security for the maintenance.

¶ 49                                III. CONCLUSION

¶ 50     For the reasons stated, we affirm the trial court's finding that there was a substantial change in circumstances, but we reverse its termination of maintenance and the security for the maintenance. We remand the cause for further proceedings.

¶ 51     Affirmed in part and reversed in part. Cause remanded with directions.

---

[6]Indeed, even David's petition to modify or terminate maintenance requested that the change occur beginning January 1, 2020, as opposed to the date he filed the petition.